THE DENVER BREWING COMPANY v. BARETS.

1. EVIDENCE.

In an action by the payee against the maker of a promissory note, evidence of a parol contemporaneous agreement between the parties that it should become operative as a note only under certain conditions is admissible.

2. SAME—PAYMENT.

The acceptance of the note of a third person raises no presumption that it is accepted in payment of an antecedent debt.

*Appeal from the District Court of Arapahoe County.*

Messrs. ROGERS, CUTHBERT & ELLIS, for appellant.

Mr. S. L. CARPENTER, for appellee.

BISSELL, J., delivered the opinion of the court.

The insignificance of this controversy is not at all commensurate with the difficulty of the question which it presents. This concerns the right to introduce parol testimony in opposition to the terms of a written agreement entered into between the parties. It is only resolvable by a consideration of the circumstances under which the writing was executed and delivered to the Brewing Company, which is the appellant here. On the 2d of September, 1890, the appellee, Barets, made and delivered to the Brewing Company a promissory note whereby on demand he promised to pay them $1,000. It will be observed there was no agreement to pay interest. The Brewing Company brought suit against him, and set up causes of action arising from the sale and delivery of goods, and the possession of this apparent piece of commercial paper.

The defendant answered, and admitted the first cause of action, and alleged the payment of the money to the sheriff. As to the second, he pleaded the paper was neither given nor

delivered as a promissory note, but under circumstances which will be better detailed by stating the proof than by stating the plea.

After the plaintiff offered the note in evidence, and made proof of a demand, the defendant was produced as a witness. His evidence was substantially all the evidence bearing directly on the transaction, and detailed the circumstances out of which it is claimed a defense was made out to the paper. According to his testimony, on the date which the note bears he went to the Brewing Company, and stated he had an opportunity to purchase a saloon in one of the outlying precincts, which had a license, for $1,000, and proposed to the Brewing Company to put up money to purchase the saloon, and to take therefor the promissory note of the prospective purchaser, secured by a chattel mortgage on his ice box, bar fixtures, and general equipment. To this proposition the Brewing Company acceded. Thereupon he asked the Brewing Company to give him the $1,000 to make the purchase with, and they gave him a check for it. After its delivery the representative of the Brewing Company asked him to give a memorandum showing his receipt of the money. Thereupon the note was drawn up and signed by Barets, and left with the Brewing Company, which agreed to return this note on receipt of the note and chattel mortgage of the purchaser of the property. Barets seemed to have acted in good faith, bought the saloon according to the arrangement, paid the $1,000 therefor, and on the 19th or 20th of the month sold it to one Rinderman, who completed the arrangement by giving his own note, due two years after its date, to the order of The Denver Brewing Company, with interest at 10 per cent per annum until paid, payable quarterly, for value received. Concurrently with the execution and delivery of this note, Rinderman executed a mortgage on the property in the saloon, under the arrangement which had been made with Barets, and delivered it to the Brewing Company. The Brewing Company took Rinderman's note and mortgage, and proceeded to do business with him, selling him beer at

a price in advance of the price charged to cash customers. The business was carried on in this way for some time, until Rinderman either abandoned it or made a failure of it, and there were sundry and divers other transfers made to different parties. Ultimately the enterprise proved a failure, and the Brewing Company foreclosed the mortgage, sold the stock, and proceeded to apply the proceeds, *pro tanto*, to the payment of the Barets note. The Rinderman note and chattel mortgage were entered on the books of the Brewing Company, and from the time of their execution were treated as its property. During the progress of the trial the plaintiff objected to the introduction of most of the testimony which tended to elicit the details of the transaction, on the general theory that it was testimony tending to vary a written agreement.

There can be no doubt of the general rule that written contracts can neither be contradicted, varied, nor altered by proof of an oral contemporaneous agreement; nor can it usually be shown that the agreement is to be liquidated or paid, except in accordance with the terms of the writing. It is well recognized that there is a very decided difference between cases where actions are brought by *bona fide* transferees of commercial paper before maturity, and those which run between the original parties to the transaction. Probably this difference need hardly be adverted to. The general rule is not regarded as at all infringed by proof of a contemporaneous parol agreement, providing this proof be accompanied by satisfactory evidence that the written instrument was either never delivered, or delivered on a condition which had not been performed, or delivered under circumstances which show that the paper, if it be of a commercial character, was never intended to be the promissory note of the party who executed it. The distinction has been thoroughly recognized, and may be regarded as well established in this country.

The present case is sought to be brought within the general doctrine first announced, on the theory that since the writing,

on the face, purported to be the promissory note of the defendant Barets, it is conclusive on this question, and he should not have been permitted to show the conditions under which he gave it, even though they tended to prove it was never delivered as a promissory note, but simply as evidence of the Brewing Company's interest, and for its protection, and as a guaranty that Barets would carry out the arrangement.

Possession of a promissory note is undoubtedly strong *prima facie* evidence that the instrument came into the hands of the holder as the promissory note of the maker, and where the testimony is equally balanced, and the matter is left at all in doubt, the instrument and its possession will be regarded by the court or jury as a controlling circumstance. It, however, has not been regarded as conclusive, and the maker has been permitted to show that it was never intended it should be his note. Barets might therefore prove it was not his note, and that the agreement was not to return the $1,000 according to the terms of the promise, but it was to stand simply as a memorandum which would protect the Brewing Company, and insure the performance of the contract. Wherever an agreement is conditionally delivered, the promise does not become an unconditional promise of the maker, nor a binding obligation, except upon the failure of the condition, or a failure of performance on the part of one or the other parties to the contract, whereupon, of course, it would become a valid and binding obligation. Parol evidence of this description does not vary or contradict the terms of the agreement. It merely goes to the proposition that the note was never executed or delivered as a promise to pay money, but was delivered as a memorandum of the engagement of the parties, to become effectual only on the contingency which may or may not have happened, according to the proof.

There are many cases wherein this exception to the general rule has been exemplified under varying conditions, and it is very ably and lucidly stated in an opinion of the supreme court of the United States. *Burke v. Dulaney,* 153

U. S. 228. Many others might be cited, but this is ample to support the conclusion at which we have arrived.

According to the defendant's testimony,—and there was nothing to contradict it,—the note was delivered as a memorandum of the agreement of the parties, to be surrendered on the carrying out of the contract. This was the purchase of the saloon by Barets; its sale to a prospective purchaser, who should execute his note, secured by a chattel mortgage for the money which was put into the enterprise by the Brewing Company. Barets seems to have carried out this contract strictly according to his undertaking. The saloon was purchased. It was sold. The purchaser gave his note to the Brewing Company, and executed a chattel mortgage to secure it. The Brewing Company took the note and chattel mortgage of the purchaser, entered it on their books, and subsequently, on the failure of the maker to pay, proceeded to foreclose it and apply the money to the liquidation of the account. The Brewing Company undoubtedly undertook to indorse the money as a credit on the Barets paper, and, when the enterprise proved unsuccessful, sought to hold him for the difference between what was received by the sale and the amount of the original advance.

If the rule of law which they invoke to sustain this proceeding was applicable, there would be no escape from the result. According to our opinion, the evidence brings the case entirely within the principle of the Dulaney decision. The result seems to work out exact equity between the parties and we cannot disturb the judgment.

The appellant also urges as error the refusal of the court to permit him to put an inquiry to the manager of the Brewing Company, whether the Rinderman note was accepted in payment of the Barets paper. The antecedent discussion makes this an immaterial error. The defendant undoubtedly pleaded payment, but there was no evidence to show payment at all, unless this conclusion should be drawn from the acceptance by the Brewing Company of the Rinderman note. It is well settled in this state that the acceptance of a note

of a third person, although for an antecedent debt, raises no presumption that it is accepted in payment. *First Nat. Bank v. Newton,* 10 Colo. 161; *Zook v. Odle,* 3 Colo. App. 87. The defendant did not undertake to sustain his plea by other testimony, and the case wholly turns on the first proposition. This is decisive of the case, and, being resolved in the appellee's favor, renders the affirmance of the judgment inevitable.

*Affirmed.*

Reed, P. J., dissenting.

I cannot concur in the majority opinion of this court. A proper respect for my associates requires me to give the reasons and grounds of dissent, which I will do as briefly as I can. The mere notation of a dissent at the end of an opinion conveys nothing to the bar or associates upon the bench. Without the reasons, it may be regarded as caprice.

A brief review of the facts becomes necessary: Appellant was engaged in manufacturing and selling beer; appellee, a wholesale and retail liquor dealer. Both were anxious to extend their business and sell their goods. Appellee testified: That on September 2, 1890, he bought a saloon for $1,000, went to appellant's manager, and asked him to advance the money ($1,000), and take a chattel mortgage on the property from the party to whom he should sell, to which the manager agreed, and gave a check for the amount, required a note for the money, and received the following:

"Denver, September 2, 1890.

"On demand, I promise to pay to the order of The Denver Brewing Company one thousand 00/100 dollars.

[Signed]          "Samuel Barets."

A week or ten days later, appellee sold the saloon for $1,500, —$500 in cash, which he retained; and the purchaser executed a note and chattel mortgage to appellant for the other $1,000. "Rinderman [purchaser] kept the saloon going for some little time, and then kind of busted up, and at that time he owed me about three or four hundred dollars for liquors

furnished. * * * I had to take hold of the saloon then again."
Sent one of his men to run it. A week or two after, sold it
to another party, whom he informed that he (appellee) had
$600 against the saloon, and appellant had a chattel mort-
gage of $1,000, which the purchaser must assume. That he
went to the appellant and assumed the mortgage. "Barets
[purchaser] told me he could do better, and wanted me to
take the place off his hands, and I took it off his hands.
Then I sold the equity of my interest in that saloon. Traded
it off for the equity in a little house on the north side."
"A. The arrangements were simply this : I asked Mr. Sei-
mon to advance $1,000 in order to purchase this place, and
that he, in payment of that,—in settlement of that $1,000—
would take a chattel mortgage on that saloon. Mr. Seimon
told me that he would, and went and got me a check for
$1,000; and, says he, 'I wish you would give me a duebill
in the meantime,' which I did. Q. What was to become of
your duebill when the chattel mortgage was given? A. It
was to be returned. Q. Was it returned? A. I asked Mr.
Seimon for the note two or three times, and he said he could
not give it up at once." "A day or two before this suit was
brought, Seimon come in and said, 'Sam, you want to see
me?' 'Yes,' I says, 'I want that note. I have asked you
several times for it,—two or three times. If I do not get it
back, I will sue for it.' Mr. Seimon says, 'When you pay
me $1,000, you can have the note back.' * * * I says, 'I
don't owe you $1,000.' * * * And the next morning two
deputies walked in."

The facts clearly established by the evidence of appellee,
regardless of others, are : *First*, that appellee obtained from
appellant $1,000, the entire purchase price of the property,
and gave his note for the amount; *second*, that he sold the
property for $1,500, retained the cash payment, and had the
purchaser execute a note and chattel mortgage for $1,000 to
appellant ; *third*, that he took title in his own name, was the
owner, dealt with it, occupied it himself, and, while the money
for the original purchase remained unpaid, traded and sold

what he called his "equity" for other property; *fourth*, that his own note remained unpaid in appellant's hands during all the time he was manipulating the property.

The suit was brought February 17, 1893. His note to appellant for the money was given September 2, 1890. The Rinderman note and chattel mortgage, which it was claimed was substituted for, and was payment of, his, was executed September 19, 1890, and for nearly two and one half years his note remained in the hands of the payee, and no demand was shown to have been made until about the time suit was brought. If it was paid, it was paid on the 19th of September, 1890, and should have been demanded at that time.

The established facts show that the appellant regarded the appellee as the debtor, and the note and mortgage of the purchaser as collateral security for the purchase money; and the conduct of appellee was such as to warrant that supposition. There was no claim that appellant had been paid in full, except by the substitution, which could not be established except by direct proof, which was wanting; otherwise the promissory note remaining in the hands of the payee could not be impeached. The circumstances attending the entire transaction were such as to sustain the validity of the note and liability of appellee. There was no claim of payment, except by the supposed substitution; and the fact that appellee retained the title and use for the length of time that he did, and then sold what he called his "equity," impairing the security, was such that nothing but the most positive proof could have established the defense. The only question was in regard to the character of the transaction. Defendant gave his version, which was entirely at variance with the circumstances. What the contract was, was the only question to be determined.

Seimon, the manager of appellant, the other contracting party, was placed upon the stand, and the following question asked: "Q. I will ask just one question, Mr. Seimon. State whether or not the note and mortgage of Christ Rinderman were ever received by The Denver Brewing Com-

pany as a payment in full, or otherwise, of the note of Sam. Barets. (Objected to as irrelevant, immaterial, and not cross-examination. Objection sustained. Plaintiff excepts.)"

This action of the court was gross error, for which the judgment should be reversed. Defendant had fully testified in regard to his defense, and it was immaterial whether it occurred upon cross-examination or otherwise. It was rebuttal, and his evidence of what the contract was should have been received. The ruling of the court was such as to prevent all the opposing evidence in regard to the contract. The judgment should have been reversed, and cause remanded for a new trial. The evidence of appellee, confronted with the attending facts, was not sufficient to warrant the judgment, and it is inequitable and unjust.