Bissell, J.
The matters involved and the propositions decided will more clearly appear by a brief statement of the issues presented by the pleadings. Hubbard filed a bill in equity to have an instrument in writing theretofore executed by the defendant, Mulligan, declared a lien and foreclosed. It substantially recited that Mulligan had filed in the United States land office an application to enter the northwest quarter section 21, township 2; the advancement by Hubbard to Mulligan of divers sums of money amounting to $2,000 for the improvement of the premises and the expenditure of the money in and about the improvements on the land. In consideration of these premises Mulligan for himself and his heirs, executors, and assigns, covenanted with Hubbard that *118 in case he should be permitted to enter the lands or procure title thereto directly or indirectly from the United States and not from the Platte Land Company from which he had theretofore purchased it, the $2,000 should be a first lien and charge on the premises with like effect as if secured by deed or mortgage, and that in case he was permitted to purchase the premises from the United States under his application to pre-empt or should obtain title thereto from the United States either directly or indirectly and not from the Platte Land Company, then he would within the date named cause the sum of $2,000 with interest to be repaid to Hubbard, his executors or assigns, and gave Hubbard authority to sell the premises with the appurtenances or so much thereof as should be necessary to pay the advancement. The instrument 'likewise provided sundry and divers conditions of sale which are unimportant since the power was not exercised. Hubbard simply filed a bill to declare it a mortgage and foreclose it.
The defendant answered by several pleas, the first of which was a denial of all the allegations of the complaint; the second, an averment that there was never any debt rvhich the defendant was obligated to pay, and that the instrument was made for Hubbard’s accommodation and without consideration. Third, he set up a partnership between himself and Hubbard which resulted in an indebtedness in his favor.; admitted the applications made by the plaintiff and the defendant for the two quarter sections, the northwest and the northeast, and alleged an indebtedness from Hubbard to him in a sum named and the procurement of his signature to the instrument for a special purpose incident to divorce proceedings pending between Hubbard and his wife, and averred that his signature was obtained by fraud. Fourth, he set up an association between himself and Hubbard, the carrying on of a stock business on that tract of land, the dissolution by consent and a’ release. Fifth, he stated a copartnership in the livery business, a resulting profit, and an agreement by Hubbard to pay, nonpayment, and a statement of the balance due thereunder.
*119 He prayed the cancellation of the instrument, the recovery of what should be shown to be due him on the partnership account from the sale of the stable, of the sum due from the running of the stock farm and a general prayer. These were the issues.
When it came to trial, the plaintiff produced the agreement, the certificate showing the entry by Mulligan, November 14, 1888, and rested. Thereupon the defendant offered his testimony. He was himself a witness, and he produced other testimony than his own to the proposition that the instrument was without consideration and given to permit Hubbard to show it in the divorce proceedings between himself and his wife. He. then offered testimony to the point that there were no improvements put on the land by Hubbard or advancements made for the purpose out of his own funds, but that whatever was done to improve the quarter was paid for out of funds resulting from their copartnership for stock-raising purposes and out of the proceeds of the livery business carried on by Hubbard and in which Mulligan claimed a half interest. He also offered testimony to the point that originally there was a contract between the Platte Land Company and himself, whereby that corporation had agreed to deed the north half of section 21 on the payment of a certain consideration specified in the written contract between the parties. This contract was dated the 8th of April, 1886. It was an agreement by the Platte Land Company to sell Mulligan the north half of section 21 on the basis of certain payments to be thereafter made at times therein designated. It stood in Mulligan’s name when he executed this mortgage. The security was delivered intermediate the execution of the contract by the Platte Land Company and Mulligan’s preemption. To make the situation plain it may be stated that when the Platte Land Company agreed to convey the land it was supposed to be a part of the lands granted to the Union Pacific Railroad Company. Subsequently the railroad’s title was disputed and all parties were doubtful about it. A further agreement between the Platte Land Company *120 and these parties need not be stated. It is enough to say that in the course of events the validity of the Platte Land Company's title was so seriously doubted, that parties commenced filing on much land which was originally supposed to be included in the government grant to the railroad, among which was this half section. Hubbard filed on the northeast quarter and Mulligan filed on the northwest quarter of section 21. There were divers filings on this northwest quarter by other parties which need not be specified. It is enough to state that the record shows that these adverse interests were obtained either by purchase or otherwise, and Mulligan’s entry received by the land office. .He thereby and within the limits of the pre-emption right became the owner of this northwest quarter. Mulligan attempted to prove, and there is evidence to that point given not only by the defendant but by others, and virtually assented to by Hubbard that it was Hubbard’s -intention to acquire title to the whole half of section 21. As to one quarter by his own entry, and as to the other quarter by the entry of Mulligan who was really to enter on behalf of Hubbard and in his interest, Hubbard advancing the necessary money and paying out what was essential to improve it in order to acquire the governmental title. On this point the case turns. Mulligan gave much testimony respecting the relations between himself and Hubbard in the stock business and in relation to the copartnership which he claimed existed between himself and Hubbard in the livery business. He also gave evidence that the security was not intended to be an absolute agreement, but was executed for ulterior purposes, that Hubbard -might use it in his divorce proceedings and was without consideration. His evidence as to the purpose for which the paper was given tended to impeach, vary and destroy its terms and show it to have been a paper without validity and established or attempted to establish by parol testimony that it was an agreement or contract other than that which it appeared to be by its terms. All this testimony was objected to but it was received subject to a determination on the final hearing.
*121 On the conclusion of the trial the court entered judgment. Prior to the announcement of the decision the court declared that it wanted no argument on matters of fact, but desired to hear from counsel only as to the validity of the instrument. The case was taken under advisement. The court finally dismissed the plaintiff’s complaint, the defendant’s cross-complaint, and held the instrument void in law, and ordered it to be delivered up for cancellation. Hubbard appealed. On this record and under the facts, the case comes here for review.
The evidence which Mulligan offered and which he was permitted to introduce, tending to maintain his contention that the agreement was not a contract but was executed for the sole purpose of permitting Hubbard to exhibit it and use it for ulterior purposes in a controversy then existing between Hubbard and his wife respecting a divorce and the division of property, was objected to by the plaintiff in error as tending to contradict the terms of a written instrument. The rule respecting the introduction of parol testimony to contradict the terms of a written instrument is tolerably well settled. It has been invoked and held in force in many cases, and under widely different circumstances. To this general rule there are few exceptions. It ordinarily excludes parol testimony as to prior and contemporaneous agreements, as well as to all subsequent declarations which' tend to vary or modify the terms of the instrument and which do not amount to a substituted agreement either on a past or a present consideration. In construing a contract courts are always permitted to resort to surrounding circumstances because thereby they put themselves in the position of the parties and can under those circumstances and in the light of the situation intelligently interpret it. On the argument, however, it was sought to bring this case within an exception and to apply the principle expressed in The Denver Brewing Co. v. Barets, 9 Colo. App. 341, and Hurlburt v. Dusenberry et al., 57 Pac. Rep. (Colo. Sup. Ct.) 860.
The exception was stated in those decisions and applied, *122 and it may be safely said it has been pretty well settled by the trend of modem decisions that a defendant to a suit on a written contract may show by parol that the contract is not his contract because it was dependent on the performance of a condition, precedent or subsequent, or on the happening of events thereafter which not occurring would leave the agreement inoperative, and a writing which, by reason of those circumstances, never became a contract. The exception has been grafted on to the general rule in order to prevent the perpetration of fraud. When a defendant assumes this burden he is bound to establish it by a strong preponderance of testimony, and the court or the jury must be thoroughly satisfied that he has fully discharged the burden in order to relieve him from the obligation of his agreement. We are quite unable to see that this principle is applicable in the present case. The defendant does not attempt to show that the contract was only to be performed in case the money was advanced for the betterments, or in case other events transpired contemplated and agreed upon. The whole scope, force and effect of his evidence is to demonstrate, if he may, that in no event, and under no circumstances, either at the time of its execution or thereafter, was the contract to be a binding agreement. We do not attempt to determine whether, under any circumstances, this case could be brought within the exception, because we do not regard the proposition as one vital to the determination of the admissibility of this evidence. It is Mulligan’s contention that the agreement was executed and delivered to Hubbard to enable Hubbard to perpetrate a fraud. According to Iris evidence it was to be used to hold out Hubbard to other persons as one possessed of property, and for the advantages which might flow therefrom. This seems to us to bring it clearly within the principle which has often been declared that where a party executes an instrument for a fraudulent purpose, and is an active participant in the scheme to defraud a third party, he may not thereafter avoid his deed or his contract by proof of this fraud and proof of *123 the purpose for which the agreement was executed. It is established and could hardly be disputed, that if a person executes a deed without consideration in order to give the grantee a fraudulent credit, he cannot thereafter set up these facts to defeat his transfer. He is estopped to assert his own fraud to avoid the transaction. We think this principle is decisive of the inadmissibility of this testimony, and that Mulligan may not be permitted to offer such, evidence to avoid his contract. Whether he will be able to show that the contract was only to become binding on the happening of a particular event, or that the condition has never been performed, or the events have never transpired whereby the exception to the rule would be applicable, we cannot in advance determine. He offered no evidence of this description, and what he did attempt to prove was clearly inadmissible under the general rule which does not permit a party to contradict a written contract by proof of a contemporaneous parol agreement where the evidence thus offered shows that the purpose of the contract was a fraudulent one in which he participated, although the benefits of the fraud were to be reaped by the other contracting party. This is all it seems necessary to say about this particular objection. The case must be reversed on other grounds, and these principles are simply laid down for the guidance of the trial court on the subsequent hearing. By the rules herein expressed, as well as those stated in the other cases cited, the court can very readily determine whether the proof which may be offered on this branch of the inquiry is, or is not, admissible.
The plaintiff insists that the evidence which the defendant gave which tended to show that Hubbard had put no improvements on the premises and had furnished no money for that purpose, was likewise inadmissible because the instrument was under seal, and the consideration might not be contradicted by parol testimony. We concede that this doctrine is supported by many reputable authorities, and was undoubtedly the law in some jurisdictions. I have never been quite able to appreciate the importance which the common-law *124 authorities attached to a seal. It has always seemed to me that the signature of the contracting party, which was the expression of an intelligent assent to the terms and conditions of the instrument was of infinitely greater importance than the inanimate wax. The authorities which gave the seal this exceeding importance to my mind manifest the spirit and somewhat of the character which led to the erection of the golden calf by the children of Israel in the wilderness. We need not consider this question. The supreme court has directly passed on it and it is not open to discussion. In Fechheimer v. Trounstine, 15 Colo. 386, the supreme court, speaking by Mr. Justice Hayt, substantially held that the recital of a consideration and its receipt in the instrument was not conclusive but was merely prima facie evidence against the one who made it. Like an ordinary receipt it was open to explanation. It also held that this rule had been applied to a deed under seal, and that the consideration in such an instrument might be explained by parol. Therefore much of the evidence which Mulligan gave to the proposition that there was no consideration for the security that Hubbard put no improvements on the land were matters which he was entitled to offer evidence on, and respecting which, if the question became a vital one, it was incumbent on the court to decide. It is quite possible the parties may complain that we do not decide this matter and affirm the judgment notwithstanding we have reached the conclusion that the court erred in holding the contract void. We do not so view our obligation. This is a matter of fact peculiarly within the province of the nisi prius court. This court is in no position to determine matters of fact. Appellate tribunals are for the decision of points of law, and. are not for the investigation of facts and the weighing of evidence. The witnesses are not before us. It is quite impossible for an appellate tribunal to weigh the testimony, and find out where the truth lies. Had the court found on this question, it would undoubtedly have been within our province to determine whether there was evidence in the record sufficient to *125 warrant this conclusion though it is our universal practice to accept the judgment of the trial court unless it is manifestly against the weight of evidence. The opportunity so largely predominates in favor of the trial court that we must leave the decision to it. Apparently the court rejected the testimony of the defendant with respect to the matters of copartnership, but whether it would or not, had it regarded those matters as pivotal to the case, we are wholly unable to determine. The court simply held as a naked proposition of law that the contract was illegal and void, and therefore with respect to this as with respect to the other matters of fact, we wholly refrain from any expression of opinion.
It will be remembered there was an outstanding contract with the Platte Land Company to convey. This passed by assignment in 1889 to Hubbard. The defendant insists that Mulligan had no title to the land because when he made the agreement with Hubbard the Platte Land Company was without interest, and the only title which he obtained was subsequently acquired by pre-emption and patent. Under these circumstances it is insisted that he had no interest which could be the subject of mortgage. We do not so understand the law. It has always been the rule that when the mortgagor is without interest a subsequently acquired title will inure to the benefit of the mortgagee by virtue of the conveyance contained in the mortgage. This interest is subject to foreclosure. 1 Jones on Mortgages, § 679; Kirkaldie v. Larrabee et al., 31 Cal. 455; Spiess v. Neuberg, 71 Wis. 279.
This security may therefore be upheld if it is otherwise legal and valid. A further reason for the application of this doctrine is found in the very terms of the instrument. Mulligan thereby agreed that in case he should be permitted to enter or should afterwards directly or indirectly acquire title from the government this security should extend to the land in order that Hubbard might receive the moneys which he advanced to improve and better the property.
The defendant insists that the security may not be enforced because it is illegal. He contends that it is an alienation of *126 the interest of the locator which is inhibited by the federal enactments ; that the contract is in its terms and by its purpose contrary to the statute and against public policy. This is on the theory that the evidence shows the original arrangement between Mulligan and Hubbard was for Mulligan to enter the land for Hubbard’s benefit, Mulligan agreeing after entry to convey to Hubbard. We concede the law is that contracts and agreements to convey land on which parties are to file under the pre-emption or homestead acts of the government are void. Wherever they have been made and suits have been based on them, they have universally been adjudged illegal. We do not however understand the law to be that the inhibition extends to incumbrances placed on the property to pay for betterments. Formerly these contracts were held to be within the inhibition, but the later authorities all agree that these securities are valid and enforceable. We need not go farther than to cite the decision of our own state on the subject. Wilcox v. John, 21 Colo. 367.
The rule has been expressed in many late cases and may now be regarded as part of the settled jurisprudence of the country. The defendant goes farther and insists it appears by Hubbard’s own evidence that such was its purpose and therefore we should declare, the contract void. We do not appreciate this necessity. We are quite ready to concede our inability to understand why this testimony was ever given or why on cross-examination the defendant should have been permitted to elicit it. As we look at it, whether it was or was not true, it is without significance and importance. There are some cases which hold, and some which seem to intimate, that even though this might be true, yet if it appeared that in point of fact the plaintiff had advanced money for the improvement of the property he might as for money had and received, compel the defendant to reimburse him regardless of the invalidity of the contract. Bateman v. Robinson, 11 N. W. Rep. 736; Anderson v. Carkins, 135 U. S. 483. In the latter case, Mr. Justice Brewer without deciding the precise proposition, said, “ It may be that Carkins can recover from *127 Anderson the value of these improvements, on the ground that Anderson has received that for which he has paid nothing ; for in such an action Carkins will not be seeking to enforce an illegal contract; ” citing some cases. “ But that is very different from the enforcement of a contract which is illegal, because against public policy.” Even though there were no other consideration for the contract, and though there was a contract that Mulligan should enter the land for Hubbard, he paying the price and advancing the money for the improvements, yet, under the intimation in this case it might be in a suit to recover this fund as money expended for Mulligan’s benefit, Mulligan would not be heard to say the original contract was illegal because the action was brought to recover money which had been expended for his benefit, and which he should not be permitted to keep. But as we understand this case, there is a still broader, more general doctrine on which the plaintiff’s action may be maintained, and whereon he may be permitted to enforce his contract which on its face is fair and on an expressed consideration, entirely legitimate and wholly unaffected by the terms and conditions or the fact of an illegal contract. It has many times been held by many eminent and reputable courts, beginning with the supreme court of the United States, that wherever the plaintiff requires no aid from an illegal transaction to establish his case, he may recover notwithstanding the inhibition and though the illegal contract may have led to the agreement on which the suit was brought, and in one sense may be said to have grown out of it. No principle is better settled than that no action can be brought on the contract itself, whether the consideration be immoral or whether it be prohibited by some enactment. It may be true the original contract between Hubbard and Mulligan was for the entry of the northwest quarter by Mulligan which he was thereafter to convey to Hubbard. But though this contract had been made, yet, if these parties make a legitimate contract, one not prohibited by statute or by law that Hubbard should advance money to put improvements on the quarter which Mulligan agreed *128 to repay, it may be enforced if based on an ample and legal consideration untainted by the prohibited agreement. This would be true even though it may have been in Hubbard’s contemplation to make this agreement to protect himself for the money advanced in the event Mulligan should refuse to carry out his bargain to convey. It may be true that no action would lie to enforce the original contract to convey. This suit is not to enforce that agreement, nor has it any connection with it. From the case it would appear that thereafter this legitimate and proper contract was entered into on a sufficient consideration theretofore or thereafter paid. No court is called on to give aid to the original illegal contract. The plaintiff does not require the aid of it to establish Ms case. It is enough that the defendant has in his possession, or has enjoyed a benefit and advantage in a thing of value which belongs to him, but which the plaintiff advanced for his benefit. As put by Mr. Justice Strong in the Planters' Bank case hereafter cited: “ Some of the authorities show that, though an illegal contract will not be executed, yet, when it has been executed by the parties themselves, and the illegal object of it has been accomplished, the money or thing which was the price of it may be a legal consideration between the parties for a promise, express or implied, and the court will not unravel the transaction to discover its origin.” Of course this quotation is not directly applicable because the illegal contract was never executed, the defendant Mulligan refusing, and refusing in bad faith, if Hubbard’s testimony is to be believed, to carry it out. The principle is directly in point. The illegal contract never was executed and no suit was ever brought to enforce it. Its illegality is conceded and the plaintiff is not compelled to offer evidence concerning it to recover. It was after the illegal contract was entered into that this legitimate agreement was executed. If it rested on a sufficient consideration which seems to be the only question of fact in the case, and one which of necessity must be decided in order to determine the rights of the parties, it is clearly and plainly enforceable and is not *129 rendered illegal, invalid, or void by reason of the antecedent and prohibited agreement. Armstrong v. Toler, 11 Wheat. 258; Planters’ Bank v. Union Bank, 16 Wall. 483; Brooks v. Martin, 2 Wall. 70; Evans v. Dravo, 24 Pa. St. 62; Scott v. Buffy, 14 Pa. St. 18; Harris v. Woodruff, 124 Mass. 205 ; Buck Albee, 26 Vt. 184; Phalen v. Clark, 19 Conn. 420; De Leon v. Trevino, 49 Tex. 88; Martin v. Richardson, 94 Ky. 183.
With this principle so thoroughly established by such a long, persuasive and strong line of authorities, we are unable to concur with the trial court. It may be when the case is retried the court may conclude there is enough in the evidence to defeat the plaintiff’s contention and to demonstrate the want of sufficient consideration. What it will conclude on this matter of fact we do not know, nor do we think it proper for us to express our own convictions about it. We understand the very great burden which a defendant assumes who undertakes to contradict a solemn and written instrument. He has the right to assume it, and if he supports it to the court’s satisfaction he may succeed. As the case now stands this is the only vital question.
The plaintiff in error argues that the testimony given by an attorney was wholly illegitimate and not receivable because of the relations which existed between the attorney and Hubbard at the time he acquired the facts about which he undertook to testify. We do not intend to comment on this phase of the case or on the propriety or impropriety of that testimony. The court made no findings of fact, nor did its decision at all turn on matters to which the attorney testified. On the subsequent trial if the court is compelled to determine questions of fact at all affected by the testimony of the attorney, it will then become important for it to decide whether that testimony is legitimate and whether the attorney ought to be received as a witness. Should this matter hereafter be • passed upon, it may be necessary for us to decide it. As the case now stands, we do not recognize its sufficiency or importance, nor do we feel at liberty in advance to determine this *130 question and preclude the trial court from regulating the admission of that testimony in view of the issues which he intends to decide.
We do not believe counsel have any right to complain because we refuse either to review or to decide any of these questions of fact. It was their privilege to require the court to make findings of fact that the case when it came up might be finally and absolutely determined. Failing to do this they cannot be heard because we decide the only question of law presented by the record, and respecting which as we conceive, the court erred.
Since we believe the court erred in holding the contract illegal and void, the decree entered must of necessity be reversed.

Reversed.