[No. 8091.]

## DAWLEY V DAWLEY'S ESTATE ET AL.

1. CONTRACTS—*Construction.* The recitals of a contract are a substantial part thereof and are not to be varied or evaded by parol evidence. (83, 84.)

2. —— *Construed.* A verbose and informal paper by which a mother upon sufficient consideration, promised to pay certain moneys to an adopted son and his wife, or the survivor of them, *held* a contract, and not of testamentary character.

3. —— *Consideration.* Love and affection is a sufficient consideration for an agreement between parent and child.

And, in relation to the question of affection the law makes no distinction between a child of the blood, and an adopted child. (84.)

The promise of a parent to pay money to a child, in substitution for a previous grant, rests upon a sufficient consideration. (85.)

4. ADOPTION—*Evidence of.* A will declaring that one named is the adopted son of the testator is competent evidence of such adoption, in conformity with the law of the domicile of the parties, though no record is produced. (83.)

The executor is estopped to question such declaration, or the conduct of the testator, conformable thereto, through many years. (83.)

5. FAMILY SETTLEMENTS—*Favored in Law.* The settlement of family differences are especially favored in law. (88.)

*Error to Weld District Court.* Hon. NEIL F. GRAHAM, Judge.

Mr. GUY DUNCAN, Mr. CHARLES ROACH, and Mr. ALBERT S. FROST, for plaintiff in error.

Mr. J. C. SCOTT, Mr. H. E. CHURCHILL, and Mr. H. N. HAYNES, for defendants in error.

Hannah J. Dawley died on the 25th day of December, 1909. Her will was later admitted to probate and in due time the plaintiff in error, Ella J. Dawley, filed her claim against the estate based upon the following written instrument:

"Greeley, Colo., Sept. 15, 1906. This is a statement and promise whereby Hannah J. Dawley promises to pay and cause to be paid to her son Edward F. Dawley and his

wife Ella J. Dawley the sum of seven hundred dollars a year, with interest at six per cent—the above sum of seven hundred a year with interest beginning with the year 1881, month of July 1st, and ending 1906, August 30th, at which time a Life Estate deed was made out to Edward F. Dawley and his wife Ella J. Dawley from Hannah J. Dawley. That is not satisfactory to Edward F. Dawley thereby causing this settlement between Hannah J. Dawley and Edward F. Dawley for reasons hereafter named. The above amount at seven hundred dollars a year for each and every year running from 1881, month July 1st, to 1906, August 30th, Hannah J. Dawley for the above amount of seven hundred dollars a year at 6 per cent hereby gives security on all the real estate of every kind and nature belonging to her estate, together with all notes and money of whatever nature or kind belonging to her said estate to Edward F. Dawley and Ella J. Dawley for the above amount of seven hundred dollars a year at six per cent until paid, the above amount of seven hundred dollars a year at six per cent to be paid in full any time the said Hannah J. Dawley's death takes place, to her son, Edward F. Dawley and his wife Ella J. Dawley if living or to either one that outlives the other whatever the case may be to either son or son's wife Ella J. Dawley, but if both Edward F. Dawley and his wife are living at time of Hannah J. Dawley's death then the above sum to be equally divided between Edward F. Dawley and Ella J. Dawley. Now in consideration of this seven hundred dollars a year at six per cent beginning the year 1881, month July 1st, and ending 1906, August 30th, to be paid Edward F. Dawley and his wife Ella J. Dawley if living at the time of Hannah J. Dawley's death to be equally divided between Edward F. Dawley and Ella J. Dawley if both are living at the time of Hannah J. Dawley's death or in case either Edward F. Dawley or Ella J. Dawley are dead at the time of Hannah J. Dawley's death then the full amount at seven

hundred dollars a year at six per cent to go to Edward F. Dawley or Ella J. Dawley whichever one outlives the other —Edward F. Dawley goes on to give his reasons for this settlement as he has already given to his mother before starting in to make these writings first as he hereby states at one time back in the state of Vermont on account of the law of Vermont only giving the widow one-third at time of her husband's death Hannah J. Dawley persuaded her husband D. L. Dawley to make a will willing her everything and all the property except one thousand dollars to Edward F. Dawley which in the first place he D. L. Dawley refused to do for the reason he said that Ed might turn out yet to be of considerable help to him before he would be of age by his help and time he might put in to work, in case he does I can't cut him down to that small amount of one thousand dollars in my will but if she Hannah J. Dawley was willing to sign writings to this effect that after his, D. L. Dawley's death any time she would be taken away and her death would take place it should be understood in the writings that all the property and everything then would go to Edward F. Dawley if alive or any time she would get married again then at the time of her marriage she would have to turn over to Edward F. Dawley the same amount of property and money that would go to Edward F. Dawley by law or that he would get if no will were made or never made by him D. L. Dawley and the writings to be put in safe keeping until they were needed for that purpose, then if you are willing to do this I will make a will willing you everything but the one thousand to Edward F. Dawley.    This Hannah J. Dawley consented to do and did do.    Then afterwards she, Hannah J. Dawley, not being satisfied with his Edward F. Dawley's having only the one thousand dollars in his father's will D. L. Dawley's, wanted her husband D. L. Dawley to change the one thousand to only five hundred dollars in his will going to Edward F. Dawley whenever his death D. L. Daw-

ley's would take place, this he D. L. Dawley declared he would not do, but after a long argument with his wife, Hannah J. Dawley, they finally came to the decision to destroy the other writings signed by her Hannah J. Dawley willing Edward D. Dawley one thousand dollars in the will the first time to writings now signed by her Hannah J. Dawley changing the one thousand in the will of D. L. Dawley's to five hundred in D. L. Dawley's will with the understanding that by changing the one thousand dollars in will to five hundred dollars in D. L. Dawley's will the writings shall now read that after D. L. Dawley's death with only five hundred dollars going to Edward F. Dawley in his will that it shall be understood by this small amount of only five hundred dollars to be paid to him Edward F. Dawley after his D. L. Dawley's death that besides this five hundred dollars Edward F. Dawley will begin drawing interest at six per cent on whatever amount he Edward F. Dawley would be entitled to and would be coming to him as D. L. Dawley's son with no will made or that never had been made by his Edward F. Dawley's father D. L. Dawley and according to whatever D. L. Dawley is worth or would be worth at the time of his death and belonging to his estate with the interest beginning after D. L. Dawley's death and running to the time of Hannah J. Dawley's and Edward F. Dawley's death providing they make or have settlement no other way before their deaths as it is hereby understood in these writings that when ever Edward F. Dawley would be sick or in need in any way or disabled in any way and in want for anything he or his family if any there be will be entitled to this interest money any time by calling for it or him Edward F. Dawley through guardean if at the time of calling for it he or his family or guardean has not overdrawn it in any way and in case it is refused to him or his guardean or his family by the said Hannah J. Dawley then at any time he or his wife or guardean can take whatever legal way

they see fit to procure what they are entitled to of this interest money or at any time Hannah J. Dawley would get married again then at the time of her marriage she would have to turn over to Edward F. Dawley or to his family if any he Edward F. Dawley leaves by death the same amount go to Edward F. Dawley if alive and in case of Edward F. Dawley by law or that he would get if no will were made or never had been made by him D. L. Dawley, and furthermore, that whenever she Hannah J. Dawley would be taken away and her death take place then at the time of her death all the property and everything then it is understood shall go to Edward F. Dawley if alive and in case of Edawrd F. Dawley being dead at the time of Hannah J. Dawley's death then the property of real estate and including everything except house furnishing jewelry and clothing in case that he Edward F. Dawley is dead but leaves a wife and children then it will go to his wife and children if any there be or to his wife or to his children either way if wife and no children then all to wife or if children and no wife then all to children.

Then after all this understanding between Hannah J. Dawley and D. L. Dawley by changing D. L. Dawleys will from one thousand dollars to five hundred dollars going to the son Edward F. Dawley in his will D. L. Dawleys and writing to be put in safe keeping Hannah J. Dawley signed all of these writing to be carried out after his death D. L. Dawley's death and her death Hannah J. Dawleys at the time of her death to be carried out after her death. Now after all of these writings and promises I have always had the hardest work to get any money coming to me through this interest at six per cent but did not care so much as I thought it was safe in the places in real estate that would not be spent so that if I don't live to get it my wife will have enough after I am under the sod to pay her for what she has done for me in taking care of me and working beyond

her strength in this old rooming house when she and I ought to have what legally belong to us through this interest at six per cent as my father D. L. Dawley was worth to my knowledge at the time of his death about thirty-five thousand dollars that I know to be the truth but at different times my mother Hannah J. Dawley has sent to her relatives to the best of my knowledge between five and six thousand dollars helping them at different times with my consent on account of my drawing interest on half of my fathers D. L. Dawleys estate beginning at time of his D. L. Dawleys death, now after all this I Edward F. Dawley don't propose to be cheated out of all that legally belongs to me and my wife and hereby take this way of settlement as I have never collected or could collect on an average the amount one hundred dollars a year in all the years since my fathers death.

These writings of ten pages I want carried out after my death in favor of my son Edward F. Dawley and his wife Ella J. Dawley if alive or to either one that outlives the other, but in case both are dead then my last will to be carried out. (Signed)   Hannah J. Dawley."

The probate court found that the claim was a valid one as against the estate, that it was a contract for a valuable consideration, and ordered it to be allowed in the sum of $26,700 and that it be paid in due course of administration in the order of its classification. An appeal was taken by the executor to the District Court, where the judgment of the probate court was reversed and the claim disallowed.

From this judgment the claimant brings the case here for review. The reasons given by the court as the basis of the judgment are as follows:

"The court finds that the status of Edward F. Dawley in the family of D. L. and Hannah J. Dawley did not constitute him an heir at law of either, and was not such as would constitute him an heir at law.

The court further finds that the instrument sued on in

this case, Exhibit A, termed a contract, and referred to by counsel as a promissory note, is not a promissory note, in that it would not be valid in the hands of an assignee nor the personal representatives of Edward F. Dawley or Ella J. Dawley; and further, that whatever the instrument is, there is absolutely no consideration in law for the making of the instrument.

The court further holds that the instrument is testamentary in its nature, and that it does not measure up to the requirements of the statute concerning the making of wills, and is, therefore, unenforceable."

SCOTT, J.

It is plain that the question of heirship is not involved in the case, except in so far as it may bear upon that of consideration. Neither is it claimed that the contract in any way constitutes a will. It is conceded by the claimant that she must recover as upon a contract or not at all.

We are relieved from much discussion as to the law of the case, by the admission of counsel for the executor, in their brief, of the following legal propositions, well sustained by authority, as follows:

"1. A promise to make provision by will for a valuable consideration, is a valid contract and an action will lie for its breach.

2. A debt, obligation or promissory note of a decedent contracted in his lifetime, though by its terms not payable until after death, may be valid as a contract.

3. An express promise to pay a certain sum at or after the promisor's death, if founded on an adequate and valuable consideration, may be enforceable after his death against his estate."

The contention of the defendant in nerror, in the language of counsel is, "the vital point in the case at bar is, that the instrument sued on is not an obligation, a promis-

sory note, or a recognition of an existing debt," hence without consideration.

The contract is explicit in that it is an agreement to pay a specific sum of money, seven hundred dollars, annually, for each and every year, for a specific time, from July 1st, 1881, to August 30th, 1906, payable in full at the death of Hannah J. Dawley. There is nothing indefinite, uncertain or conditional about this promise. Therefore, if it is supported by a sufficient consideration then the obligation is a valid claim against the estate.

In order that this question may intelligently be considered, it seems proper to review the life history of the persons involved, in so far as it affects their relationship and association, in the light of the statements made in the agreement and the testimony offered at the trial.

The contract relied on, dictated and written by the parties themselves, is crude in form, as would naturally be expected under such circumstances, but contains many admissions affecting the question of consideration.

In 1855, D. L. Dawley and Hannah J. Dawley, husband and wife, without issue then or since, were living in the state of Vermont, and at that time and as is recited in their several wills, adopted as their own child, Edward F. Rockwood, then seven years of age, and gave to him their name, Dawley.

There was admitted in evidence, over the objection of plaintiff in error, a purported agreement between Sumner Rockwood and D. L. Dawley, as follows:

"This indenture entered into the 29th day of August, 1855, between Sumner Rockwood of Lawrence, Mass., & D. L. Dawley of Mount Holly, Vt. witnesseth; that said Rockwood on his part relying on the honor and good faith of said Dawley doth hereby give and bestow upon said Dawley his minor son named Edward Francis Rockwood aged seven years and doth hereby relinquish to said Dawley the sole care, custody and control of said boy during his minority

to train up manage and educate the same as if the said Edward F. was the own child of said Dawley and said Dawley on his part agrees to exercise a kind and parental care over said boy, to feed, clothe and educate him, to provide nursing and medicine when sick, and in all respects to do for him and by him the same as parents in his circumstances and condition in life are expected to do by their own children.

In witness whereof we have hereunto set our hands the day and year above written.

(Signed) Sumner Rockwood.
D. L. Dawley."

The objection to the introduction of this instrument was, that it was not properly identified. However this may be, we will treat it for the purposes of this case, as being genuine, and properly in evidence.

In 1872, D. L. Dawley came to Boulder, Colorado, to take up his home. Later, and in 1877, his wife and the boy Edward joined him, and very soon thereafter the family removed to Greeley where each continued to live until death.

In 1881, D. L. Dawley died testate, and in his will made the following bequest: "I give to my adopted and beloved son, Edward Francis Dawley the sum of five hundred ($500.00) dollars to be paid to him at the age of twenty-one years with interest from the date of my decease."

In the instrument, a line is drawn through the words "One thousand dollars," and the words "five hundred" appear to have been afterward inserted, thus corroborating the acknowledgment of Hannah J. Dawley, in the contract in question, that at the time of the making of the will, she induced her husband to reduce the amount to five hundred dollars.

It also appears in her contract here, that Dawley was induced to make his bequest of one thousand dollars in the first instance, and later of five hundred dollars, only upon the promise of Hannah that at her death, Edward F. Dawley should have all his father's estate.

D. L. Dawley died in 1881, and presumably on the date from which the seven hundred dollar annual payments are to run, July 1st, as agreed in the contract in question. Edward continued to live with his adopted mother until the time of his marriage with the plaintiff in error, the date of which does not appear, but which was many years prior to his death. After his marriage, Edward and his wife continued to live with his mother much of the time, and when living separately, in her property, and in the same town. Edward was a confirmed invalid for several years before his death, and during the last year of his life, he and his wife lived with Hannah at her home, where he died sometime prior to the death of his adopted mother. Thus they lived in the relation of son and parents, up to the time of his own death. A period of more than fifty years had elapsed after his coming into the family before the execution of the contract now in question.

Witnesses who were acquainted with the family during their life in Greeley, testify that he was always spoken of and recognized by D. L. Dawley and Hannah, as their son; that the public generally believed him to be their child of the blood, and it appears that only to a few was it disclosed that he was their adopted son.

There is no proof in the record upon which the conclusion of the trial court, that he was not the adopted son of D. L. and Hannah Dawley, can be fairly based. The executor offered no proof of record or absence of record, upon which such conclusion can be justified. The agreement between D. L. Dawley and Sumner Rockwood is not shown to be the only act or proceeding in adoption. Nor is there any testimony to show that Edward was not adopted in conformity with the laws of the state of Vermont. If the agreement between Rockwood and Dawley can have force at all, it is in confirmation of the repeated and uniform declarations of both D. L. Dawley and his wife Hannah, that Ed-

ward was their adopted son. The former so declared in his will. Hannah so declared in her will, made in 1893, or thirteen years before the execution of the agreement now before us. She so declared in the present agreement.

It does not therefore lie in the mouth of her executor to deny her declaration in the contract, or her uniform conduct in that regard for more than half a century, and he is estopped from so doing.

The executor is in privity with the decedent. There was no apparent fraud or mistake. Edward and his wife acted upon and fully relied on the contract. The contract was never questioned by Hannah Dawley in her lifetime. She lived two years after its execution.

In *Casey v. Galli*, 94 U. S. 673, 24 L. Ed. 168, it is said:

"Parties must take the consequences of the position they assume. They are estopped to deny the reality of the state of things which they have made appear to exist, and upon which others have been led to rely. Sound ethics require that the apparent, in its effects and consequences, should be as it were real, and the law properly so regards it."

To the same effect is *Camp v. Byrne et al.*, 41 Mo. 525:

"Where mother and son enter into a written contract, which is correctly read to her before its execution, and she then voluntarily executes it, she is bound by its terms until it is set aside by a proceeding brought for that purpose. The facts, if satisfactorily established, that she could not read writing, and on account of the confidence reposed by her in her son, did not carefully weigh, so as to comprehend the terms of the instrument, when it was read to her, afford no ground to treat it as a nullity or to permit her to contradict its terms by parol evidence when interposed by the son as a defense to an action at law brought by her against him." *Cassilly v. Cassilly*, 57 Ohio St. 582.

The recitals in the contract were a substantive part of

it, and these cannot be varied or evaded by parol evidence.—
*Cocks v. Parker et al.,* 47 N. Y. 107; *Frost v. Brigham,* 139
Mass. 43, 29 N. E. 217; *Schneider v. Turner,* 130 Ill. 27, 22
N. E. 497, 6 L. R. A. 164; *Indianapolis U. R. Co. v. Dearborn,*
60 Fed. 880, 9 C. C. A. 296; *Randolph v. Helps,* 9 Colo. 29,
10 Pac. 245; *Hubbard v. Mulligan,* 13 Colo. App. 116, 57
Pac. 738.

We must conclude then that the recital in the contract,
that Edward F. Dawley, the promisor, was the adopted son
of Hannah J. Dawley, cannot be disputed by oral evidence,
and further, that if this were permitted, the testimony re-
ceived as intended for that purpose even though competent,
does not establish the contrary.

The law makes no distinction as between a child born
in lawful wedlock and one adopted, as related to the question
of love, and affection, being sufficient consideration for an
agreement between parent and child and in this case, this
consideration must be held to be sufficient of itself.

Again, the contract recites that D. L. Dawley, from
whom all of the estate of Hannah J. Dawley was derived,
bequeathed this to her, with the exception of the small
amount to Edward, upon the consideration and promise of
Hannah, that at her death the entire estate should go to
Edward.

Under the law this contract and promise, so affecting
the will of D. L. Dawley, and upon which he relied and acted,
was a sufficient consideration for the contract and promise
of Hannah, involved here. But there appears to be a third
and further sufficient consideration for the promise to pay.

On the 30th day of August, 1906, Hannah Dawley exe-
cuted to Edward and Ella Dawley what is termed a life es-
tate deed. This was just sixteen days prior to the execution
of the contract involved. This deed recites as its considera-
tion, "love and affection," and a "desire that the second
parties may have a home during their lifetime either jointly

or singly, according as the one may survive the other." This conveyed a lifetime estate in certain real estate including water rights.

By the terms of Hannah's will, executed in 1893, after making certain bequests to the extent of $4,000.00, all the residue of her estate was to be converted into mortgage loans, and the income thereof and so much of the principal as may be necessary to provide him with comfort, should go to Edward as her adopted son.

The will further provided that upon the death of Edward all of the estate with the exceptions stated, should go to his children if any living at the time, otherwise to certain of the devisor's relatives.

This will was executed thirteen years prior to the contract in question. There were no children and it must have been apparent to Edward at the date of the life estate deed, and of the present agreement, that in his physical condition he could not hope to live long, and it was natural that he should be anxious to provide for his wife from the estate, that he felt should properly be his, under the promise to the father, which induced the extent of the bequest to the mother under the father's will. Hence, the execution of the life estate deed.

The contract recites that the life estate deed is not satisfactory to Edward and his wife Ella, and for this reason the settlement contained in the contract was substituted for the life estate deed, in which contract the specific sum of money was so agreed to be paid. This was also a sufficient consideration for the present contract.

Whether or not this was a settlement of a valid or doubtful right, it was a sufficient foundation for the agreement.

It was said in *Swem v. Green*, 9 Colo. 538:

"It is not necessary, in the compromise of a doubtful right, that the parties have settled the controversy as the

law would have done. *Fisher v. May's Heirs,* 2 Bidd. 448. It is well-settled principle of law that the compromise of a doubtful right, though it afterwards turns out that the right is on the other side, where the parties act in good faith, and with a full knowledge of the facts, is valid and binding. The cases announcing this doctrine generally quote approvingly the terse and logical remarks of Lord Hardwicke upon the subject, made in *Stapilton v. Stapilton,* 1 Atk. 10, to-wit: 'An agreement entered into upon a supposition of a right, or of a doubtful right, though it afterwards comes out that the right was on the other side, shall be binding, and the right shall not prevail against the agreement of the parties; for the right must always be on one side or the other; and therefore the compromise of a doubtful right is a sufficient foundation of an agreement.' *Honeyman v. Jarvis,* 79 Ill. 322; *Mill's Heirs v. Lee,* 6 T. B. Mon. 97 (17 Am. Dec. 118). It is held in *Curry v. Davis,* 44 Ala. 281, that where a creditor and his debtor entertain doubts of the validity of the debt, and make an honest compromise of it, a note given by the debtor for the compromise sum agreed upon cannot be contested as lacking consideration. And in *Scott v. Warner,* 2 Lans. 49, it was said that if a disputed claim for damages be compromised, the settlement is a sufficient consideration for the note given thereon."

Such settlements are especially favored by the law in case of family differences, and it is universally held that such settlements made in good faith are upon sufficient consideration.

Lord Chancellor Broughman, in *Clifton v. Cockburn,* 10 Eng. Chan. 3, Mylne and Keen, 99, says:

"It is unnecessary to cite authorities to show how strongly the Court always leans in support of family arrangements, and how reluctantly it will disturb them. Nor is it necessary to go so far as was done in *Cory v. Cory,* 1 Ves. s. 19, where a compromise made under the influence

directly exerted, was held insufficient to set aside what was done under such pressure."

"Fair compromises, especially between members of a family, are favorably looked upon by Courts of Equity, their object being to prevent or put an end to litigation and to preserve the peace and property of families."—Beach on Modern Equity at Sec. 1003.

"Family agreements and settlements are treated with special favor by the Court of Equity, and equities are administered in regard to them which are not applied to agreements generally, and this on the ground that the honor and peace of families make it just and proper to do so. Accordingly, it has been laid down as a general rule that a family agreement entered into upon the supposition of a right, or of a doubtful right, though it afterwards turns out that the right was on the other side, shall be binding, and the right shall not prevail against the agreement of the parties."— Am. & Eng. Ency. Law, 2 ed., vol. 12, p. 875.

The judgment is reversed with instruction to the District Court to affirm the judgment of the County Court.

GABBERT, C. J., and GARRIGUES, J., concur.

Decided June 7, A. D. 1915. Rehearing denied October 4, A. D. 1915.