# No. 14,179.

## Estate of Schofield.

## Schofield *v.* Schofield.

(73 P. [2d] 1381)

Decided November 15, 1937. Rehearing denied December 6, 1937.

Mr. Mortimer Stone, Mr. Alden T. Hill, for plaintiff in error.

Mr. Chester A. Bennett, for defendant in error.

*En Banc.*

Mr. Justice Bouck delivered the opinion of the court.

George N. Schofield died intestate and childless. The present case involves a judicial declaration of heirship to his estate. The county court of Larimer county has declared LeNora Schofield, who claimed as surviving widow, to be the sole heir. An appeal was taken to the district court, where on trial de novo a judgment was entered declaring Arthur F. Schofield, father of the deceased, to be such sole heir. LeNora asks us to review and reverse the judgment.

Said Arthur F. Schofield had filed in the county court a petition for determination of heirship naming himself and the said LeNora Schofield, plaintiff in error, as the only two persons who are or claim to be heirs.

No person other than Arthur F. and LeNora has at any time asserted a claim of heirship in the course of the proceedings. The controversy thus became one between the two claimants, a question concerning them alone. Under our statute of descent and distribution Arthur F., as surviving father, would be the heir if LeNora were not entitled to be declared sole heir as surviving widow. It is clear that the court could not decide the controversy except in favor of one or the other of these two.

Just one month after the filing of the petition, which was two weeks before the case was called for trial in the county court, and six weeks before the trial in the district court was begun, the following contract was entered into between the two claimants:

"Agreement

"Memorandum of Agreement, Made and entered into this 9th day of November, A. D. 1936, by and between LeNora Schofield, hereinafter referred to as party of the first part, Arthur F. Schofield, hereinafter referred to as party of the second part, Witnesseth:

"That Whereas, party of the first part claims to be the widow and sole and only heir at law of George N. Schofield, who departed this life in Larimer county, Colorado, on July 24, 1936, and the party of the second part claims to be the father and sole and only heir at law of the said George N. Schofield, deceased, and * * *

"Whereas, it is the mutual desire of the parties hereto that an amicable adjustment be made with reference to said estate property, and that any contest with reference to the descent thereof be eliminated; and

"Whereas, the parties hereto have mutually agreed upon a settlement of the difficulties and contests herein and are desirous that said agreement be reduced to writing and carried into effect.

"Now therefore, in consideration of the mutual promises of the parties hereto and the performance of the terms and conditions hereinafter set forth, the party of the second part convenants and agrees that he will not in any manner or at any time question, dispute or contest the right of first party as the widow and sole and only heir at law of George N. Schofield, deceased, and that he does hereby, without equivocation, recognize the said LeNora Schofield as the lawful widow of George N. Schofield, deceased. * * *

"It is further agreed that the party of the first part will convey to the party of the second part the following described real estate situate in Larimer county, Colorado, to-wit: The south half of the southwest quarter of section 36, the west half of the southeast quarter of section 10, and the east half of the northwest quarter of section 4, all in township 8 north, range 70 west of the 6th P. M. said conveyance to be by good and sufficient

warranty deed, free and clear of all liens and encumbrances of whatsoever kind or nature except the general taxes for the year 1936 and thereafter and to be made on or prior to the final settlement of the estate of George N. Schofield, deceased; it being understood, however, that the second party does guarantee that the title vested in George N. Schofield is marketable and free and clear of all liens, encumbrances and adverse claims except taxes as aforesaid and agrees to accept the same as such, and provided further that possession of said premises shall be delivered to second party on or before December 1, 1936.

"First party further agrees to convey to second party by good and sufficient instrument of conveyance one plot in the cemetery lot owned by said estate, said plot to be the one adjoining the grave of Mrs. A. F. Schofield.

"It is further agreed that the cow and calf now in possession of second party and having the brand of said George N. Schofield thereon, and the wagon and box, 3″ with narrow tires, shall become the sole and absolute property of second party, and that first party will give second party a bill of sale for the same. * * *

"And in consideration of the covenants and conditions herein contained, the said second party does hereby release first party from any and all liabilities, claims or demands of whatsoever kind or nature, except those herein specifically set forth to be performed and does hereby disclaim any right, title, claim or demand in or to said estate or any part thereof, except the portions hereinabove set forth to be conveyed.

"This agreement shall extend to and be binding upon the heirs, administrators, executors and assigns of the respective parties hereto.

"In witness whereof, said parties have hereunto set their hands and seals the day and year first hereinabove written.

LeNora Schofield (Seal)
Arthur F. Schofield (Seal)"

The foregoing instrument was duly signed by the parties to it. No attempt was made to set the contract aside. To be sure, counsel for the father argues that it is the absolute legal duty of the county court in such cases to decide the question of heirship irrespective of agreements between the claimants, and that therefore public policy renders such agreements illegal. No authorities are cited in support of the proposition, and we cannot approve this argument. We cannot conceive how the contract could be against public policy when it merely involves the descent and distribution of property and its transfer. No matter publici juris is apparent here. In the absence, therefore, of a successful attack upon the contract as such, we must recognize the latter as in full force. There is no contention, nor even a suspicion, that the contract is invalid for any reason whatever. It is certain that it is not illegal on its face. The language is clear. Whatever rights the father might have possessed as a potential heir of his deceased son were by his own act surrendered in favor of the other claimant. It amounts to an express acknowledgment by him that her claim was superior. Such acknowledgment, when made by the formal contract in evidence here, is the best kind of evidence. Moreover, it constitutes an estoppel by contract. See 21 C. J., pages 1110, 1111, §110: "* * * There are two sorts of what has been termed 'estoppel by contract,' namely, (1) estoppel to deny the truth of facts agreed upon and settled by force of entering into the contract, and (2) estoppel arising from acts done under or in performance of the contract. The first form of estoppel, if the contract is in writing, is analogous to certain phases of estoppel by deed, and is not in strict propriety a species of estoppel in pais, since it is wholly based on a written instrument. * * * Unlike the case of estoppel by conduct, it can seldom be an answer to estoppel by contract that the party against whom the estoppel is claimed acted in ignorance of the facts and under mistake." Again §111: "* * * If, in mak-

448

ing a contract, the parties agree upon or assume the existence of a particular fact as the basis of their negotiations, they are estopped to deny the fact so long as the contract stands, in the absence of fraud, accident, or mistake. * * *" See, also, Id., page 1237, §243: "* * * If in a particular transaction or course of dealing the authority, capacity, character, or status of one of the parties is recognized or asserted as one of the basic facts on which the transaction proceeds, both parties are as a rule estopped to deny that the one occupied that position or sustained that character * * *."

There could be no clearer or less ambiguous recognition of LeNora as the surviving wife than appears in the contract above quoted.

Viewed from another angle, the contract before us was obviously intended as a means of settling the legal controversy between the only possible claimants to heirship. Settlements of family disputes are strongly favored. *Dawley v. Dawley's Estate,* 60 Colo. 73, 87, 152 Pac. 1171, 1175.

The judgment is accordingly reversed and the case remanded to the district court with directions to vacate its judgment and transmit the record to the county court, in order that the latter court may proceed with its judgment.

Judgment reversed with directions.

Mr. Justice Young dissents.