IN THE MATTER OF THE ESTATE OF CARMEN COSMAN, A/K/A CARMEN HERBISON, DECEASED.

Superior Court of New Jersey
Appellate Division

Submitted December 6, 1983—Decided April 24, 1984.

Before Judges ANTELL, JOELSON and McELROY.

*Messineo & Messineo*, attorneys for appellant George Cosman (*William M. Messineo* on the letter brief).

*Braverman & Lester*, attorneys for respondent Carmen Herbison (*Jeffrey A. Lester*, on the brief).

The opinion of the court was delivered by

McELROY, J.A.D.

Oral contracts between two testators to distribute their estates in an agreed manner have caused much litigation in this and other jurisdictions. *See, e.g. Woll v. Dugas*, 104 *N.J.Super.* 586, 587, 599 (Ch.Div.1969), aff'd 112 *N.J.Super.* 366 (App.Div.

1970) and the comment to UNIF.PROBATE CODE § 2–701, 8 *U.L.A.* 364 (1972). This is a case of that character.

Appellant is the executor of Carmen Cosman's 1982 will and appeals a judgment imposing a constructive trust on that estate in favor of respondents, legatees under her 1981 will. The trial court did so after finding that Cosman had agreed, upon making her earlier will, to leave five-sevenths of her estate to those legatees, the children of John E. Herbison. We reverse and enter judgment for defendant.

The question presented to us requires consideration of *N.J. S.A.* 3A:2A–19, *L.*1977, *c.* 412, § 22, effective September 1, 1978.[1] That statute provides:

A contract to make a will or devise, or not to revoke a will or devise, or to die intestate, if executed after September 1, 1978, can be established only by (1) provisions of a will stating material provisions of the contract; (2) an express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or (3) a writing signed by the decedent evidencing the contract. The execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills.

Pursuant to *R.* 2:10–5 we elect to exercise our original jurisdiction. The facts are not complex. We find them to be as follows.

Carmen Cosman and John E. Herbison lived together for 22 years as residents of Fairfield, New Jersey. Herbison was married to another woman, the mother of the respondents, and was never divorced. On June 20, 1981 at a time when Cosman was facing major heart surgery she and Herbison executed wills. Cosman's will devised all of her property to Herbison and provided that should he predecease her the entire estate would be devised to and divided equally among her two sons, his four sons and his daughter. She named Herbison as her executor. In the event of his prior death or disqualification his son, John A. Herbison, was to serve as executor. Herbison's will, in turn, gave his estate to Cosman and in the event of her

---

[1]Now *N.J.S.A.* 3B:1–4, effective May 1, 1982.

prior death he bequeathed it to her sons and his own five children in equal shares. He named Cosman as his executrix and, alternatively, his son John A. Herbison. Neither will referred to the other nor did either refer to any mutual agreement to make these wills and not to revoke the devises each had made. The wills were made and acknowledged in the state of New York. They were apparently drawn by a New York lawyer who was perhaps unaware of the controlling New Jersey statute.

Cosman survived her operation. Indeed, she survived Herbison, who died October 18, 1981, and acquired his estate. On March 5, 1982 she executed a new will, revoking her prior will and leaving her entire estate to her two sons and a grandson. She nominated her son, George N. Cosman, as executor. Cosman died February 2, 1983 and her will was admitted to probate March 7, 1983.

On April 11, 1983 the five Herbison children filed a complaint against Cosman's estate which recited the foregoing facts and asserted that the wills executed by Cosman and Herbison on June 20, 1981 "were made pursuant to an understanding and agreement by and between the parties thereto that they would reciprocally execute their wills ... and that the survivor of the two would devise and bequeath all of the property owned by said survivor to John A. Herbison, Paul Herbison, Tom Herbison, George Herbison, Cheryl Herbison Paueck, Richard N. Cosman and George N. Cosman." The complaint also alleged that "[c]ontrary to and in breach of the express agreement ..." Cosman made a new will not in conformance with her will of June 20, 1981. Plaintiffs demanded a judgment decreeing that Cosman's executor hold her estate in trust for the beneficiaries of the 1981 will; an accounting; an injunction against other disposition of the estate; an order setting aside probate of the 1982 will; an admission to probate of the 1981 will, and costs and attorney's fees.

A plenary hearing was held at which Herbison's son, John A. Herbison, was the sole witness. He testified that in a telephone conversation in late June of 1981 Cosman told him of the 1981 mutual wills and explained their content. He then telephoned his father and recited the import of his conversation with Cosman. Within a day or so before Cosman's heart operation he met with her and his father at a restaurant in Fairfield. Their conversation concerned the intent of the mutual wills. He stated, "They made me understand that ... this was an agreement between them ...." Cosman was worried about surviving the contemplated operation. She extracted John A.'s promise that he would honor her wishes as to the eventual dispositions to her children and to himself and his siblings of the estate which would eventually be available. John E. Herbison "wholeheartedly concurred" that John A. was to eventually be responsible for "honoring their wishes." After Herbison died no attack was made on the disposition of his estate, not even by the still living and undivorced mother of the Herbison children.

At the conclusion of this testimony the judge rendered his oral decision. He held "there was no contract here not to revoke a will. There is nothing that has been presented to the court that would indicate a contract." He referred to the language in the statute which states "[t]he execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills," and from this concluded "we cannot infer anything from the fact that mutual wills were executed which would give rise to an evidentiary presumption." He next ruled that John A. Herbison's testimony was admissible under *Evid.R.* 63(32). The Judge then ruled, apparently on the basis of *Woll v. Dugas, supra,* "that here the equities are in favor of [plaintiff's] case." He found "that the plaintiff [sic] had proved by clear and convincing evidence there was an agreement that the property was to be disposed of in the fashion as provided in the wills of June 20, 1981 .... So consequently, I will impose a constructive trust on the estate of

Carmen [Cosman] and direct that it be distributed in accordance with the will of June 20, 1981 ...." A judgment was entered June 16, 1983 imposing such a constructive trust.

A curious feature of the judge's oral decision is the manner in which it ignores the clear language and intent of *N.J.S.A.* 3A:2A–19 and by which it concludes that there was no proof of a contract between Cosman and Herbison "not to revoke" their concurrent wills, yet finds "that there was an agreement that the property was to be disposed of in the fashion as provided in the wills dated June 20, 1981."

We assume that the trial judge's sense of fairness and equity was offended by Cosman's acceptance of Herbison's estate and her subsequent repudiation of her own agreement to provide for his children in consideration of his undertaking, honored by the absence of any revocation on his part, to make her his sole heir. Were we free to ignore the clear statutory language and the obvious intent of *N.J.S.A.* 3A:2A–19 we would find that plaintiffs had presented clear and convincing evidence of a contract to make a will or devise and not to revoke the agreement. Under the equitable principles of *Woll v. Dugas, supra,* at 599 we would impose a constructive trust upon Cosman's 1982 will. Obviously, however, the Legislature has by the enactment here considered precluded such a determination.

The evidence in this case establishes an oral contract between Cosman and Herbison that their estates would be devised in the manner evinced by their wills concurrently made on June 20, 1981. Implicit in their mutual undertaking to make such devises was the promise not to revoke either will. Both were residents of this state, as ·are, apparently, the parties to this suit. Although the wills were drawn by New York counsel and executed and acknowledged in that state, no issue is raised as to the applicability of New York law. *See,* however, *Woll v. Dugas, id.* at 594–599 (New Jersey law applied to similar agreement where the mutual wills were executed in New York.) The New Jersey statute applies to this case and its terms are

clear and unequivocal. After September 1, 1978 "a contract to make a will or devise, or not to revoke a will or devise ... can be established *only* by (1) provisions of a will stating material provisions of the contract; (2) an express reference in a will to contract and extrinsic evidence proving the terms of the contract; or (3) a writing signed by the decedent evidencing the contract. The execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills" (Emphasis ours).

Although our search for legislative history developed no expression of legislative purpose, the statement accompanying the bill declares it to be "one of a series of bills adopted from the proposed Uniform Probate Code ...." The section in question is a duplicate of section 2–701 of the Uniform Code. The comment to section 2–701 delineates the legislative intent:

> It is the purpose of this section to tighten the methods by which contracts concerning succession may be proved. Oral contracts not to revoke wills have given rise to much litigation in a number of states; and in many states if two persons execute a single document as their joint will, this gives rise to a presumption that the parties had contracted not to revoke the will except by consent of both.
>
> This section requires that either the will must set forth the material provisions of the contract, or the will must make express reference to the contract and extrinsic evidence prove the terms of the contract, or there must be a separate writing signed by the decedent evidencing the contract. Oral testimony regarding the contract is permitted if the will makes reference to the contract, but this provision of the statute is not intended to affect normal rules regarding admissibility of evidence. [8 *U.L.A.* 364 (1972)].

None of the statutory requisites are established by the evidence in the case. The contract was oral and the wills were silent as to its existence. The Legislature has seen fit to prescribe the "only" way such a contract may be legally established. The statute's clear language leaves no room for judicial construction. This oral agreement is not enforceable. The principles of equitable fraud and promissory estoppel urged by respondents are unavailing in the face of the unequivocal

legislative declaration. Were we to enforce such principles we would nullify the clear purpose of the statute. Cosman and Herbison are charged with knowledge of this statute which was in existence when they made their agreement. *Widmer v. Tp. of Mahwah*, 151 *N.J.Super.* 79, 83 (App.Div.1977). The resulting inequities were not occasioned by the law but by their failure to adhere to it. The applicable principles governing our decision are those set forth in *Dacunzo v. Edgye*, 19 *N.J.* 443 (1955):

> While a statute in derogation of the common law is usually strictly construed, *State v. Court of Common Pleas of Mercer County*, 1 *N.J.* 14 (1948), this rule will not be permitted to defeat the Legislature's obvious purpose or lessen the scope plainly intended to be given a statute, *Carlo v. Okonite-Callender Cable Co.*, 3 *N.J.* 253 (1949); *Preziosi v. Buonaccorsi*, 16 *N.J.Super.* 15 (App.Div. 1951), and when the intent of the Legislature is clearly and plainly expressed it must be carried out by this court, *Blackman v. Iles*, 4 *N.J.* 82 (1950). The power of our Legislature to make such a change as was made by this statute for the common good, morals and welfare of our people is not open to challenge.

> We must construe a statute as written, hence a statute should not be construed to permit its purpose to be defeated by evasion, *Grogan v. DeSapio*, 11 *N.J.* 308 (1953), and we must enforce the legislative will as written and not according to some unexpressed intention, *Hoffman v. Hock*, 8 *N.J.* 397 (1952). [*Id.* at 451].

Although we are sensitive to the wrong done to plaintiffs by Cosman's subsequent change of mind we cannot reinstate the common law principles of *Woll v. Dugas* which were nullified by this statute. That which was also said in *Dacunzo* applies here:

> There is nothing new or startling in such result of legislative action. The Legislature is neither omniscient nor prescient, *Bucsi v. Longworth B. & L. Ass'n*, 119 *N.J.L.* 120, 128 (E. & A.1937), and evidence of human fallibility can be found fairly often in enacted statutes and even in decisions of the courts. In the face of a peremptory command of a statute, certain seeming inequities innate in a problem must give way. The wisdom of a statute is not for the courts. *Reingold v. Harper*, 6 *N.J.* 182, 195 (1951); *State v. Monahan*, 15 *N.J.* 34 (1954). The most we can do is to draw attention to the result. [*Ibid.* at 454].

The judgment of June 16, 1983 is vacated. Judgment is entered in favor of defendant dismissing plaintiffs' complaint.