**Marlene R. OLESEN, Appellant,**

v.

**Betty Pedersen MANTY, personally, and as Personal Representative of the Estate of Alvin C. Olesen, et al., Respondents.**

**No. C5–88–2246.**

Court of Appeals of Minnesota.

April 11, 1989.

John G. Fillenworth, Duluth, for appellant.

Dennis Korman, Cloquet, for respondents.

Heard, considered, and decided by RANDALL, P.J., and KALITOWSKI and SCHULTZ,* JJ.

## OPINION

RANDALL, Judge.

Appellant Marlene R. Olesen filed a complaint in St. Louis County District Court alleging that her husband, Alvin C. Olesen (decedent), breached an oral contract the parties had entered to make mutual irrevocable wills. Respondent Betty Pedersen Manty, the personal representative of decedent's estate, denied the existence of a contract and moved for summary judgment. The trial court granted respondent's motion and entered judgment against appellant. We affirm.

## FACTS

Appellant and decedent were married on October 11, 1985. On November 19, 1985, appellant and decedent executed mutual wills. In these wills, appellant and decedent left their entire estates to each other.

On September 23, 1986, decedent, unknown to appellant, executed a second will.

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

Decedent's second will left a 50% interest in his real property to appellant and the other 50% interest to decedent's two daughters. The remainder of decedent's estate was left to appellant. This second will has been admitted to probate.

Appellant contends that by secretly executing the second will, decedent breached an oral contract the parties had entered to make mutual irrevocable wills. As evidence of a contract, appellant points to three writings. The first is the November 19th will in which appellant was left decedent's entire estate. The second is the September 23rd will which cut appellant's share in decedent's real property to one-half of the estate. The third is a letter[1] written by decedent and delivered to appellant, pursuant to decedent's wishes, after his death. The letter explained why decedent executed the second will. Appellant claims that the existence of an oral contract to make mutual irrevocable wills may be implied from these three documents taken together.

Appellant brought this action to enforce the terms of the first will. Respondent moved for summary judgment based on appellant's failure to satisfy the statutory requirements for proving the existence of a contract to make mutual irrevocable wills.[2] The trial court granted respondent's motion.

## ISSUES

1. Did the trial court err by concluding that appellant did not satisfy the statutory requirements for proving the existence of a contract to make irrevocable wills?

1. The letter provides in pertinent part:

    As I write this to you I feel it is only fair that my daughters are entitled to a share of my inheritance.

    \* \* \* \* \* \*

    I agreed that upon my death she or your family should have the house providing I lived longer than you.

2. Minn.Stat. § 524.2–701 (1986) governs the methods by which contracts to make and not revoke wills may be established. The statute provides:

2. Did the trial court err by denying appellant's claim that her part performance of the alleged oral contract removed it from the operation of Minn.Stat. § 524.2–701?

## ANALYSIS

On appeal from a summary judgment the function of an appellate court is to determine: "(1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of the law." *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). When deciding whether a party was entitled to summary judgment, the reviewing court must view the evidence in the light most favorable to the nonmoving party. *Vacura v. Haar's Equipment, Inc.*, 364 N.W.2d 387, 391 (Minn.1985).

### I.

### *Contract to make a will*

Appellant contends that she has satisfied the requirements of subsections (1) and (3) of the controlling statute. The trial court held, as a matter of law, that the documentary evidence appellant produced did not meet either statutory requirement.

First, appellant argues that she and decedent stated the material provisions of the contract in the wills they executed on November 19, 1985. According to appellant, the material terms of the contract are that she and decedent agreed to leave their entire estates to each other, and they agreed not to revoke these mutual wills. She further argues that since she and decedent executed wills leaving their entire es-

A contract to make a will or devise, or not to revoke a will or devise, or to die intestate, if executed after January 1, 1976, can be established only by (1) provisions of a will stating material provisions of the contract; (2) an express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or (3) a writing signed by the decedent evidencing the contract. The execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills.

Letter from Alvin C. Olesen to Marlene R. Olesen (undated).

tates to each other, the requirement that the material provisions of the contract are recited in the wills is fulfilled.

Respondent claims that the mutual wills do not state the provisions of either a contract to make mutual wills or a contract not to revoke a mutual will. Therefore, respondent contends, appellant did not meet the requirements of the statute.

We agree with respondent. An examination of the wills executed on November 19, 1985, reveals no reference to a contract to make and not revoke mutual wills. Therefore, we hold that since neither will states "material provisions of the contract," subsection (1) has not been satisfied and appellant's claim on that issue is rejected.

■ Appellant next argues that she has satisfied subsection (3) of the statute which requires a "writing by the decedent evidencing the contract." Minn.Stat. § 524.2–701(3) (1986). Appellant claims the three writings in existence, when read together, satisfy subsection (3) of the statute. The writings are: the first will in which appellant inherits all of decedent's estate; the second will in which appellant's inheritance is reduced to one-half decedent's estate; and a letter from decedent to appellant explaining why decedent revoked the first will.

Appellant asserts it is implicit in the three documents that decedent and appellant executed a contract to make mutual irrevocable wills. Respondent counters that the three documents do not indicate that a contract to make or not to revoke mutual wills ever existed between appellant and decedent. The trial court agreed with respondent and held that the writings did not satisfy subsection (3) of the statute.

Both parties rely on *In re Estate of Trobaugh*, 380 N.W.2d 152 (Minn.Ct.App. 1986), to support their positions. In *Trobaugh*, appellants claimed that their grandmother made an oral contract to bequeath her house to them in her will. A letter, which referred to the decedent's desire to allow her grandchildren to purchase her home on a contract for deed, was held not to satisfy Minn.Stat. § 524.2–701(3) (1984). *Id.* at 155. The *Trobaugh* court found the letter insufficient for two reasons. First, the letter made "no reference to a will and contained no indication of decedent's intent regarding the disposition of her house following her death." *Id.* Second, the letter contained no reference to a contract to make such a will. *Id.* Therefore, the *Trobaugh* court held that the letter did not satisfy subsection (3) of the statute. *Id.*

Appellant's claim is similar to the one raised in *Trobaugh*. Unlike *Trobaugh*, the letter here does contain some reference to decedent's intent regarding the disposition of his property following his death. The letter acknowledges that decedent had agreed to devise his *house* to appellant's daughter, if decedent outlived appellant. Obviously, decedent did not outlive appellant. The letter then goes on to explain why decedent changed his mind about that gift and why he wanted his children to share in his estate. Like the letter in *Trobaugh*, this letter makes no reference to a contract.

The existence of a contract to make a will must be proved by "clear, positive, and convincing evidence." *Clark v. Clark*, 288 N.W.2d 1, 8 n. 10 (Minn.1979) (citation omitted). The trial court properly found that appellant's documentary evidence did not meet this exacting standard. None of the documents upon which appellant relies refer to a contract to make mutual wills. *Trobaugh*, 380 N.W.2d at 155. At best, the documents prove that, at one point in time, decedent planned to leave his house to appellant's family, but changed his mind.[3] Since there is no reference to any contract between appellant and decedent, we reject appellant's claim that she satisfied subsection (3) of the statute.

■ Appellant next argues she should be allowed to prove the existence and terms of the contract by oral testimony. However, the statute prohibits the use of extrinsic evidence to prove the terms of the contract *unless* the will contains an express refer-

---

3. Both parties agree on the basic law of testamentary documents. Absent a contractual dis-

pute such as the issue here, a drafter needs no justification to revoke, modify, or rewrite a will.

ence to the contract. Minn.Stat. § 524.2–701(2) (1986). Since the 1985 will does not expressly refer to the alleged contract, no oral testimony is allowed to prove either the existence or the terms of the contract. To allow such testimony would violate the plain language of the statute and undermine the purpose for which the law was enacted, namely to tighten the methods of proving contracts concerning succession. *See Trobaugh,* 380 N.W.2d at 154 (citation omitted). Therefore, we affirm the trial court's ruling that disallowed oral testimony to establish the existence of the contract.

■ Even assuming that a contract to make mutual wills could be implied from the three documents, as appellant contends, the issue of the irrevocability of the wills still remains. "The execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills." Minn.Stat. § 524.2–701. Respondent asserts that appellant must satisfy the same statutory provisions to prove that the contract was irrevocable as is required to prove that a contract was made. Appellant argues that testimony should be permitted to prove the irrevocability of the contract. Appellant also claims that while execution of the mutual wills in 1985 does not create a presumption of a contract not to revoke, execution of the wills may be *some* evidence of a contract not to revoke.

The trial court rejected appellant's arguments because the statute, by its express terms, governs both contracts to make and contracts not to revoke wills. *See* Minn. Stat. § 524.2–701. Additionally, the trial court ruled that allowing testimony on the alleged oral contract would defeat the purpose of the statute. Therefore, the trial court concluded, to prove a contract *not to revoke* a mutual will, appellant must also

satisfy one of the three subsections of the statute.

We agree with the trial court. The documents relied on by appellant do not reveal the decedent's intent not to revoke the 1985 will. Other courts have held that although documents contain sufficient evidence of contracts to make mutual wills, those contracts are not irrevocable unless some express mention of an intent not to revoke is contained in the documents. *See, e.g., In re Estate of Moore,* 137 Ariz. 176, 178, 669 P.2d 609, 612 (Ct.App.1983) (interpreting identical statute).[4] No express mention of an intent not to revoke is contained in any of appellant's documents. Therefore, even if appellant's documents were sufficient to prove a contract to make mutual wills, we hold that they are not sufficient to prove that the wills could not be revoked.

## II.

### *Part performance*

■ Appellant's second attack on the trial court's ruling is that her performance of the alleged oral contract removes it from the operation of Minn.Stat. § 524.2–701. Appellant claims that her situation is analogous to an oral contract to convey land which may be removed from the statute of frauds through the doctrine of part performance. Appellant contends that she fully performed her part of the oral agreement by quitting her job upon decedent's request; executing a mutual will leaving her entire estate to decedent; naming decedent the beneficiary of her life insurance policy; placing 650 shares of Minnesota Power stock in joint tenancy with decedent; and using her life savings for living expenses.

Appellant also claims that two provisions of the probate code impliedly recognize the part performance doctrine.[5] Appellant ar-

---

**4.** The Arizona court stated, "while [the letter] may show an agreement to execute mutual wills, it certainly does not show an agreement to execute irrevocable mutual wills." *Id.* at 178, 669 P.2d at 612.

**5.** The first is Minn.Stat. § 524.1–103 (1986) which provides:

Unless displaced by the particular provisions of this chapter, the principles of law and equity supplement its provisions.

The second is Minn.Stat. § 524.1–106 (1986) which provides:

Whenever fraud has been perpetrated in connection with any proceeding or in any statement filed under this chapter or if fraud is used to avoid or circumvent the provisions

gues that these two statutes provide the legal basis for recognizing a part performance exception to Minn.Stat. § 524.2–701.

Respondent contends that if the part performance doctrine were recognized as an exception to the statute, the floodgates would open to fraudulent claims. Every time either party wrote a simple will, one side or the other could argue there was part performance, and the strict dictates of the statute need not be followed. Respondent also argues that had the legislature intended to provide an exception to the statute through the doctrine of part performance, it would have expressed this intent. In support of this contention, respondent points out that the general statute of frauds, Minn.Stat. § 513.01 (1986), contains a specific provision which recognizes the doctrine of part performance, Minn.Stat. § 513.06 (1986). On the other hand, appellant concedes no Minnesota cases interpreting this statute expressly recognize the doctrine of part performance. The *Trobaugh* case discussed the issue, but left open the question of whether the doctrine of part performance could remove an oral contract to make and not revoke a will from Minn.Stat. § 524.2–701.

Prior to the enactment of the statute, case law recognized the applicability of the part performance doctrine to oral contracts to devise land. *See, e.g., Alsdorf v. Svoboda*, 239 Minn. 1, 57 N.W.2d 824 (1953). However, the statute specifically provides that the *only* way to prove the existence of a contract to make or not to revoke a will is by complying with its requirements. Therefore, we decline to engraft a part performance exception onto Minn.Stat. § 524.2–701.

Support for our conclusion is found in cases from other jurisdictions with identical statutes. *In re Estate of Cosman*, 193 N.J.Super. 664, 475 A.2d 659 (App.Div. 1984), presented a situation in which two unrelated individuals executed mutual wills pursuant to an oral agreement. One of the parties died and, after inheriting decedent's estate, the survivor revoked her will and executed another which changed the beneficiaries. *Id.* at 665, 475 A.2d at 660. Following her death, the original beneficiaries filed a claim against her estate to enforce the terms of the first will.

The plaintiffs in *Cosman* argued that principles of equitable fraud and promissory estoppel should allow the plaintiffs to enforce the first will. That court recognized the inequity of the situation, but felt compelled to abide by the expressed intent of the legislature and apply the statute as written. *Id.* at 666, 475 A.2d at 662. The court stated: "The resulting inequities were not occasioned by the law but by [the parties] failure to adhere to it." *Id.* at 666, 475 A.2d at 662; *see also Rieck v. Rieck*, 724 P.2d 674, 676–77 (Colo.Ct.App.1986) ("application of the equitable principle of part performance is unwarranted * * * [and] would nullify the clear purpose of the statute").

*Cosman*, a stronger factual setting for appellant's position, presented a situation in which the equities overwhelmingly favored the appellant. However, even there, that court felt it was bound by the intent of the legislature as expressed in the statute. Here, unlike the decedent in *Cosman*, appellant can still change her will if she desires. Furthermore, appellant is not left without an inheritance. She takes one-half of decedent's estate under the second will. Finally, the result we reach furthers one of the underlying policies of the probate code which is "to discover and make effective the intent of a decedent in distribution of property." Minn.Stat. § 524.1–102(b)(2) (1986).

## DECISION

The trial court correctly held that appellant failed to satisfy the requirements of

---

or purposes of this chapter, any person injured thereby may obtain appropriate relief against the perpetrator of the fraud or restitution from any person, other than a bona fide purchaser, benefiting from the fraud, whether innocent or not. Any proceeding must be commenced within two years after the discovery of the fraud, but no proceeding may be brought against one not a perpetrator of the fraud later than five years after the time of commission of the fraud. This section has no bearing on remedies relating to fraud practiced on a decedent while living which affects the succession of the estate.

Minn.Stat. § 524.2–701. The trial court correctly rejected appellant's claim that her part performance of the alleged oral contract removed it from the operation of Minn.Stat. § 524.2–701.

AFFIRMED.