**Robert D. BRODY, Petitioner,**

v.

**Thomas H. BOCK, Respondent.**

No. 93SC681.

Supreme Court of Colorado,
En Banc.

June 5, 1995.

Rehearing Denied June 26, 1995.

Hamil Professional Corp., J. Lawrence Hamil, Michelle W. Stern, Christina V. Miller, Denver, for petitioner.

William R. Fishman, Denver, for respondent.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *Bock v. Brody*, 870 P.2d 530 (Colo.App. 1993), the court of appeals reversed a directed verdict entered by the trial court in favor of the petitioner, Robert D. Brody, and against the respondent, Thomas H. Bock, on a common-law fraud claim asserted by Bock against Brody. The court of appeals also held that the trial court's order dismissing a claim for unjust enrichment asserted by Bock against Brody was not appealable. Having granted Brody's petition for certiorari review of these two conclusions,[1] we affirm in part, reverse in part, and remand this case to the court of appeals with directions.

I

The trial court entered its directed verdicts in favor of Brody and against Bock on Bock's claims of common-law fraud and unjust enrichment at the conclusion of Bock's case-in-chief. In so doing, the trial court found the following facts, viewing the evidence most favorably to Bock.

Bock and Brody first met in early 1978. At that time Bock was employed by a stock brokerage firm as an underwriter and as the firm's research director. Brody was the president and sole shareholder of two companies, American Growth Sponsors, Inc. (hereafter "American Growth"), and Investment Research Corporation (hereafter "IRC"). American Growth was a securities brokerage firm that sold shares of American Growth Fund (hereafter "the Fund"), a registered mutual fund, and other investments. IRC was the investment advisor to the Fund.

Bock and Brody became friends, and in December of 1978 Bock accepted a position with American Growth as an underwriter. In the ensuing months the two became close personal friends. Bock, Brody, and their spouses frequently dined together and took several vacations together. Bock and Brody exchanged gifts, had lunch together almost every day, and regularly conversed with each other after work.

---

1. The court of appeals also held that the trial court properly dismissed a claim for fraud in the inducement asserted by Bock against Brody. Brody requested certiorari review of that portion of the court of appeals' judgment, and we granted that request. However, the court of appeals' ruling on this issue benefitted Brody, and Bock has not sought certiorari review of that ruling. Because Brody was not adversely affected by that portion of the court of appeals' opinion, he has no standing to raise this argument. *Miller v. Reeder*, 157 Colo. 134, 136, 401 P.2d 604, 605 (1965). We therefore conclude that the writ of certiorari as to this issue was improvidently granted and, accordingly, deny Brody's request for certiorari review thereof.

In early 1979 American Growth was engaged in best efforts underwriting, an enterprise wherein the underwriter does not purchase securities from the issuing company but offers securities to the public as an agent of the insurer. During 1979 the market for best efforts underwriting declined and the market for firm commitment underwriting substantially increased. In firm commitment underwriting the underwriter purchases securities directly from the issuer and assumes the risk of re-selling the securities, as a principal, to the public. When the market for best efforts underwriting declined sharply during 1979, Bock began to consider other employment opportunities.

In May of 1980 Bock discussed his concerns about his future in corporate finance and underwriting with Brody, and Brody initially recommended that Bock abandon his career in underwriting and focus solely on selling shares of the Fund. When Bock resisted this suggestion, Brody stated that if Bock would agree to sell shares of the Fund Brody would execute a codicil to his will bequeathing all of the stock of American Growth and of IRC to Bock, would accept only such compensation from the two companies as would be necessary to meet his living expenses, and would appoint Bock a lifetime director of the two companies.

In April or May of 1981, Brody took Bock to Brody's bank, opened a safe deposit box, and showed Bock an executed codicil to his will (hereafter "the codicil"). Bock testified that he memorized the contents of the codicil, which was captioned "Codicil to last will and testament of Robert David Brody," and stated that "[s]o long as Thomas H. Bock is an officer or director of either American Growth Fund Sponsors or Investment Research Corporation, upon my death, he shall inherit all of the outstanding common stock of both companies, free of any estate or inheritance taxes."

Bock testified that on the basis of Brody's promises he agreed to remain an employee of American Growth and IRC as a seller of funds, but that in January of 1991 Brody suggested that he and Bock should "part company." Brody asked Bock to sign an agreement which provided that Bock would waive all claims against American Growth; IRC; affiliated companies; and present and former directors, officers, agents, and employees of the companies. The agreement also included a two-year non-competition clause effective upon cessation of Bock's employment with the companies.

Bock refused to sign the proposed agreement until he received a copy of the codicil and a written document setting forth the oral agreement regarding the codicil to Brody's will. When Brody refused to provide Bock with a copy of the codicil, Bock initiated this civil action against Brody, American Growth, and IRC. The complaint asserted claims for breach of contract to make a will, breach of contract, breach of a duty of good faith and fair dealing, breach of fiduciary duty, fraud in the inducement of a contract, unjust enrichment, and common-law fraud.

Prior to trial Brody, American Growth, and IRC filed motions to dismiss the claim for breach of contract to make a will on the ground that such claim failed to satisfy the requirements of section 15–11–701, 6B C.R.S. (1987) (hereafter "the succession statute"), and to dismiss the claim for breach of duty of good faith and fair dealing pursuant to C.R.C.P. 12(b)(5) for failure to state a claim upon which relief could be granted. The trial court granted the motions, and Bock did not appeal the dismissal of these two claims.

Bock subsequently filed a motion pursuant to C.R.C.P. 41(a)(2) to withdraw his claims against American Growth and IRC on the ground that the companies were "no longer necessary parties to this case." The trial court granted the motion. The issues of liability and damages were bifurcated, and the issues regarding liability were tried to a jury in May 1992.[2]

At trial Brody testified as an adverse witness during Bock's case-in-chief. Brody denied entering into any oral agreement to bequeath the stock in the two companies to Bock or guaranteeing Bock a lifetime directorship on the board of American Growth or IRC, and testified that in May of 1980 he

---

**2.** The trial court sat as the trier of fact with respect to the unjust enrichment claim.

had no intention of devising his stock in those companies to Bock. Brody further testified that he did execute a codicil to his will in June 1981 (hereafter "the 1981 codicil"), which codicil contained the following provisions:

### SPECIFIC REQUEST [sic] OF STOCK

So long as and if Thomas H. Bock of the County of Arapahoe, State of Colorado, is an officer, director, or employee of either American Growth Fund Sponsors, Inc. or Investment Research Corporation, or both, on the date of my death, I hereby give to the said Thomas H. Bock all of the stock of American Growth Fund Sponsors, Inc. and Investment Research Corporation registered in my name or in which I have a beneficial interest on the date of my death.

Brody also testified that in 1988 he changed his will to provide for a specific bequest of $500,000 to Bock and that after the initiation of this lawsuit he executed a new will omitting Bock's name.

At the conclusion of Bock's case-in-chief Brody orally requested the trial court to enter a directed verdict in favor of Brody and against Bock on Bock's claims for common-law fraud, fraudulent inducement to enter into a contract, breach of fiduciary duty, breach of contract, and unjust enrichment. The trial court granted the motion and held that the terms of the 1981 codicil differed from the terms of the alleged oral agreement and therefore did not meet the requirements of the succession statute; that Bock's fraudulent inducement and common-law fraud claims "fell within the ambit of the contract" and should be deemed contract claims; and that no fiduciary relationship existed because there was no evidence of a legal relationship between the parties. The trial court also dismissed Bock's unjust enrichment claim against Brody on the ground that any enrichment had been conferred on American Growth and IRC rather than on Brody. The trial court's order reflected that the unjust enrichment claim was dismissed "without prejudice."

On appeal the court of appeals affirmed the trial court's judgment insofar as it dismissed Bock's claims for breach of fiduciary duty and fraudulent inducement. *Bock v. Brody*, 870 P.2d 530, 533–34 (Colo.App.1993). However, the court of appeals reversed the trial court's judgment insofar as it dismissed Bock's common-law fraud claim. *Id.* at 534. The court of appeals held that "to the extent that one performs an agreement in reliance upon the fraudulent promise of another to make provision for the actor in a will, [the succession statute] does not foreclose a court from imposing a remedy for commission of the fraud." *Id.* In a special concurrence Judge Rothenberg emphasized that Bock was entitled to recover only those damages that directly resulted from his reliance on the alleged fraud. *Id.* at 535 (Rothenberg, J., specially concurring). Although both parties appealed the trial court's judgment with respect to the unjust enrichment claim, the court of appeals dismissed the appeal with respect to that issue, holding that American Growth and IRC were indispensable parties pursuant to C.R.C.P. 19 and that the dismissal without prejudice was not a final, appealable order. *Bock*, 870 P.2d at 533.

## II

Brody argues that the succession statute bars all claims based upon alleged promises to make a will which do not comply with that statute, that Bock's common-law fraud claim is dependent upon terms of an oral agreement which do not satisfy the requirements of the succession statute, and that Bock's fraud claim is therefore barred by that statute. Brody contends alternatively that Bock's common-law fraud claim was properly dismissed by the trial court because such claim is indistinguishable from the claim of fraud in the inducement that was also dismissed by the trial court. We reject these arguments.

### A

■ In 1973, the General Assembly adopted the succession statute, which provides in pertinent part as follows:

**Contracts concerning succession.** A contract to make a will or devise, or not to revoke a will or devise ... *can be established only by* provisions of a will stating

material provisions of the contract, an express reference in a will to a contract, and extrinsic evidence proving the terms of the contract, or a writing signed by the decedent evidencing the contract. The execution of a joint will or mutual or reciprocal wills does not create a presumption of a contract not to revoke the will or wills and the fact that a will or wills executed at or about the same time contain mutual or reciprocal provisions, other than provisions relating to a contract, shall not be any evidence that such will or wills are made in consideration of each other.

Ch. 451, sec. 1, § 153–2–701,[3] 1973 Colo.Sess. Laws. 1538, 1561–62 (emphasis added).[4] While we have not recently had occasion to consider the provisions of the succession statute,[5] the court of appeals has stated that "the purpose of the statute is to tighten the methods by which contracts concerning succession may be proved because oral contracts not to revoke wills have given rise to much litigation." *Rieck v. Rieck*, 724 P.2d 674, 676 (Colo.App.1986) (citing 8 U.L.A. 129, Estate, Probate & Related Laws § 2–701 (1972)). Certainly persons could falsely allege the existence of an oral agreement with a testator, and such allegations would be difficult if not impossible to contradict after the testator's death. The requirement that a person claiming such an oral agreement must produce a written contract to that effect or some written memorandum of the agreement represents sound public policy designed to deter such fraudulent behavior. *Orlando v. Prewett*, 218 Mont. 5, 705 P.2d 593, 597–98 (1985); *see* Page on Wills § 10.10 (1960).

The court of appeals concluded that the succession statute is analogous to the statute of frauds and that "the strong public policy against fraud" supports its holding that Bock could pursue his fraud claim notwithstanding the fact that the agreement did not comply with the succession statute. *Bock v. Brody*, 870 P.2d 530, 534 (Colo.App.1993). In *Witmer v. Perini*, 32 Colo.App. 110, 113, 508 P.2d 413, 415 (1973), the court of appeals described the predecessor to the succession statute as analogous to the statute of frauds. Courts are divided with respect to the question of the relationship between statutes similar to the succession statute and statutes of frauds. One court has characterized the succession statute as "a mini-statute of frauds." *In re Estate of Moore*, 137 Ariz. 176, 669 P.2d 609, 612 (1983). Another court has stated that the succession statute was "intended to ... wash away all of the authority and decisions dealing with the application of the Statute of Frauds...." *Orlando*, 705 P.2d at 597. We agree with the court of appeals that both the succession statute and the statute of frauds are designed to protect individuals against fraudulent claims.

In Colorado we have long recognized the principle that the statute of frauds should not be permitted to be an instrument of fraud. *Kiely v. St. Germain*, 670 P.2d 764, 769–70 (Colo.1983); *Hildebrand v. Rolf*, 100 Colo. 304, 309, 67 P.2d 492, 494 (1937). Cases from other jurisdictions reflect differing views, however. *See Zurn Constructors, Inc. v. B.F. Goodrich Co.*, 746 F.Supp. 1051, 1058 (D.Kan.1990) (where claim does not depend upon proof of oral contract but upon proof of elements of fraud, doctrine which bars tort claim premised on contract not complying with statute of frauds is not applicable); *Leisure Am. Resorts v. Knutilla*, 547 So.2d 424, 427 (Ala.1989) (finding of fraud at the inception of a contract precludes the invocation of the statute of frauds as a defense to the contract); *Durham v. Harbin*, 530 So.2d 208, 212 (Ala.1988) (although allowing equity to intervene where contract does not meet stat-

---

**3.** Section 153–2–701 was recodified at Section 15–11–701 without change during the 1973 recodification of Colorado Revised Statutes.

**4.** The succession statute is substantially similar to § 2–701 of the Uniform Probate Code.

**5.** We did consider 1963 C.R.S. Section 153–5–41, the predecessor to the succession statute, in *Tarr v. Hicks*, 155 Colo. 159, 393 P.2d 557 (1964), and *In re Schofield*, 101 Colo. 443, 73 P.2d 1381

(1937). Section 153–5–41 provided in pertinent part as follows:

> (1) Every agreement to make a will, or give a legacy or make a devise, or to make any provision by will, or to refrain from making or revoking a will, shall be void unless such agreement, or some note or memorandum thereof, shall be in writing and subscribed by the party charged therewith....

1963 C.R.S. Section 153–5–41.

ute of frauds would render such statute a nullity, plaintiff can bring an action for fraud notwithstanding the statute of frauds where the defendant intended "not to perform [the agreement] operating at the inception of the transaction"). *But see Caplan v. Roberts,* 506 F.2d 1039, 1041 (9th Cir.1974) (where oral agreement is unenforceable under statute of frauds, buyer precluded from recovery based in fraud on the ground that the oral promise was made without the intention of performing it); *Ostman v. Lawn,* 305 So.2d 871, 873 (Fla.Dist.Ct.App.1974) (statute of frauds cannot be avoided by a suit for fraud based on oral representations); *Lilling v. Slauenwhite,* 145 A.D.2d 471, 535 N.Y.S.2d 428, 429 (1988) (contract which is itself void under the statute of frauds cannot be used as a predicate for a fraud action).

■ We conclude that, in view of our jurisprudence, a claim alleging fraudulent conduct is not precluded by the succession statute even if the alleged fraudulent conduct consists of oral statements which could not be enforced as creating contractual obligations because they fail to satisfy the requirements of the succession statute. We have previously determined that a plaintiff may bring an action for promissory estoppel notwithstanding the application of the statute of frauds defense based on a "strong legislative concern that the statute not be utilized to perpetrate a fraud...." *Kiely,* 670 P.2d at 770. We conclude that the succession statute, like the statute of frauds, must not be allowed to shield the commission of fraud.

■ Brody relies on several cases involving claims for equitable relief in support of his argument that the succession statute should be strictly construed to bar Bock's common-law fraud claim. It is true that courts have refused to grant equitable relief to parties alleging oral contracts to make wills in the absence of evidence satisfying the requirements of the succession statute. *Rieck,* 724 P.2d 674 (no resulting trust may be imposed on the assets of the decedent where requirements of the succession statute were not met); *In re Estate of Cosman,* 193 N.J.Super. 664, 475 A.2d 659, 662 (1984) (equitable fraud and promissory estoppel are unavailable if agreement does not meet requirements of the succession statute). In addition, it is generally accepted that part performance will not justify a grant of equitable relief when a contract to make a will does not meet the requirements of the succession statute. *See In re Estate of Cosman,* 475 A.2d at 662; *Orlando,* 705 P.2d at 598 (oral contract not meeting requirements of the succession statute cannot be enforced on the basis of a part-performance exception); *Olesen v. Manty,* 438 N.W.2d 404, 409 (Minn. App.1989) (application of part-performance exception to statute of frauds is inapplicable to succession statute). However, Bock does not request equitable relief in his common-law fraud claim. That claim requests an award of compensatory and punitive damages resulting from allegedly fraudulent conduct by Brody.[6] Decisions denying plaintiffs' claims for equitable relief do not control the issue here presented.

## B

■ Brody contends in the alternative that as a matter of law Bock failed to establish his claim for fraud. Because Brody requested the entry of a directed verdict with respect to this claim, the evidence must be viewed in the light most favorable to Bock. *Bloskas v. Murray,* 646 P.2d 907, 912 (Colo.1982); *Romero v. Denver and Rio Grande W. Ry. Co.,* 183 Colo. 32, 37, 514 P.2d 626, 628–29 (1973). A motion for a directed verdict should only be granted in the clearest of cases, *McGlasson v. Barger,* 163 Colo. 438, 442, 431 P.2d 778, 779 (1967), and should never be granted where the plaintiff makes out a prima facie case. *Romero,* 183 Colo. at 37, 514 P.2d at 629.

■ To establish a prima facie case of fraud, a plaintiff must present evidence that the defendant made a false representation of a material fact; that the party making the representation knew it was false; that the party to whom the representation was made

---

**6.** Bock may not recover contract damages in this case; he may recover only those damages resulting from Brody's alleged tortious behavior.

did not know of the falsity; that the representation was made with the intent that it be acted upon; and that the representation resulted in damages. *Kinsey v. Preeson*, 746 P.2d 542, 550 (Colo.1987). A claim of fraud may be premised upon one party's "promise concerning a future act ... coupled with a present intention not to fulfill the promise[.]" *Id.* at 551 (citing *Stalos v. Booras*, 34 Colo. App. 252, 256, 528 P.2d 254, 256 (1974)); *H & H Distrib. v. BBC Int'l*, 812 P.2d 659, 662 (Colo.App.1990) (fraud cannot be predicated upon mere nonperformance of a promise, but a promise concerning a future act combined with present intention not to fulfill that promise can be actionable fraud).

■ Bock testified at trial that Brody promised to leave all the stock in the two companies to Bock and place Bock in a position of lifetime director of the companies. Bock also introduced evidence that at the time he made such representations Brody had no intention of carrying them out, that Brody intended for Bock to rely on those representations, that Bock did rely on them, that such reliance was reasonable, and that Bock suffered damages as a result of such reliance.

■ The trial court did not find that the evidence introduced by Bock, if believed by the trier of fact, failed to establish common-law fraud. Rather, the trial court determined that Bock could not pursue his common-law fraud claim in tort because Brody's representations were the same representations that formed the substance of the alleged oral contract. The conclusion does not follow from the premise. The gravamen of Bock's fraud claim is not Brody's breach of an alleged oral agreement. The gravamen of the fraud claim is the allegation that Brody knowingly made a false representation concerning a present intention to perform a future act. *See Kinsey*, 746 P.2d at 551; *Zurn Constructors, Inc.*, 746 F.Supp. at 1058. Oral representations are sufficient to establish a claim of fraud. *Kinsey*, 746 P.2d at 550–51. The fact that such alleged representations constitute the substance of Bock's breach of contract claim does not require dismissal of his tort claim. The gist of the fraud action is Bock's change of position in

justifiable reliance on Brody's knowing false statement. The content of the allegedly fraudulent statement is material not for the purpose of requiring Brody to perform the promise but for the purpose of establishing that Bock acted reasonably but detrimentally in justifiable reliance upon the false statement.

We conclude, as did the court of appeals, that the trial court erred in dismissing Bock's common-law fraud claim on the basis that the oral agreement forming the basis thereof could not be enforced under the succession statute. A contrary conclusion would encourage and condone fraudulent behavior.

### III

Brody contends that the court of appeals erroneously dismissed his argument on appeal and that the trial court erred in dismissing Bock's unjust enrichment claim without prejudice rather than with prejudice. Brody argues that this portion of the trial court's judgment in fact determined the merits of Bock's claims and is therefore appealable. We agree.

Bock's complaint asserted claims against Brody, American Growth, and IRC. Prior to trial Bock voluntarily dismissed his claims against the corporate defendants, pursuant to C.R.C.P. 41(a)(2).

At the conclusion of Bock's case-in-chief, Brody requested the trial court to enter a directed verdict in favor of Brody and against Bock on Bock's unjust enrichment claim on the sole ground that a shareholder of a corporation cannot be held liable for any unjust benefits realized by the corporation. Brody relied primarily on *United States v. Dean Van Lines*, 531 F.2d 289 (5th Cir.1976), in support of his argument. The trial court agreed with Brody's argument and, quoting at length from *Dean Van Lines*, held that as a shareholder Brody could not be held responsible to Bock for any unjust enrichment realized by American Growth and IRC. The trial court's written order reflects that the unjust enrichment claim was dismissed "without prejudice." In its initial oral ruling, the trial court stated that Bock was free to

refile such claim against the two corporations.

Both parties appealed the trial court's dismissal of the unjust enrichment claim. Bock asserted that, contrary to the trial court's judgment, the evidence supported his claim. Brody argued that the claim should have been dismissed with prejudice. The court of appeals dismissed the parties' appeals on this issue, holding that the trial court's order dismissing the claim without prejudice did not constitute a final order for purposes of appellate review. The court of appeals also determined that for purposes of C.R.C.P. 19 the two corporations were indispensable parties to the action. *Bock v. Brody*, 870 P.2d 530, 533 (Colo.App.1993).

## A

■ A final judgment is a jurisdictional prerequisite to review on appeal. *People v. Proffitt*, 865 P.2d 929, 931 (Colo.App.1993). Generally, a trial court's dismissal of a claim without prejudice does not constitute a final judgment for purposes of appeal because the factual and legal issues underlying the dispute have not been resolved. C.R.C.P. 41(a)(2); *District 50 Metro. Recreation Dist. v. Burnside*, 157 Colo. 183, 186–87, 401 P.2d 833, 835 (1965); *Norby v. Charnes*, 764 P.2d 407, 408 (Colo.App.1988). However, a trial court's characterization of an order to dismiss a claim without prejudice is not dispositive. *Proffitt*, 865 P.2d at 931. If a judgment in fact completely resolves the rights of the parties before the court with respect to a claim and no factual or legal issues remain for judicial resolution, the judgment is final as to that claim. *Id.; Kempter v. Hurd*, 713 P.2d 1274, 1277 (Colo.1986); *Snyder v. Sullivan*, 705 P.2d 510, 512 n. 2 (Colo.1985).

■ In this case, Brody orally requested the trial court to enter a directed verdict against Bock on the latter's unjust enrichment claim at the conclusion of Bock's case-

in-chief. The trial court did not immediately rule on that motion, indicating that it wished to review certain portions of the record before doing so. Subsequently, the trial court recited the principles of law governing the entry of directed verdicts, exhaustively reviewed the evidence in the case in the light most favorable to Bock, and concluded that the evidence when so viewed did not as a matter of law establish his claim against Brody for unjust enrichment. Because this conclusion of law completely determined the rights of Bock and Brody with respect to Bock's unjust enrichment claim against Brody, that portion of the trial court's order constituted a final judgment as to that claim for purposes of appeal. *Proffitt*, 865 P.2d at 931; *see Cyr v. District Court*, 685 P.2d 769, 771 (Colo.1984); *Carter v. Small Business Admin.*, 40 Colo.App. 271, 573 P.2d 564, 566 (1977).

The trial court did state that its dismissal of Bock's unjust enrichment claim was "without prejudice." However, the record as a whole establishes that the claim was dismissed without prejudice to Bock's rights to file claims of unjust enrichment against one or both of the companies in a separate action.[7] In effect, the unjust enrichment claim was dismissed with prejudice as to Brody.

## B

In dismissing the parties' appeals of the trial court's dismissal of Bock's unjust enrichment claim against Brody, the court of appeals suggested that American Growth and IRC were indispensable parties to that claim, that the trial court had so concluded, and that the trial court properly dismissed the claim without prejudice on that ground. *Bock*, 870 P.2d at 533. Brody argues that the trial court did not find that the two companies were indispensable parties and that in fact they were not indispensable parties. We agree with Brody's argument.

■ C.R.C.P. 19 provides in pertinent part as follows:

7. In their briefs to this court both parties argue that the trial court's dismissal of Bock's unjust enrichment claim is a final and therefore appealable judgment in the case. Both parties have also informed this court that Bock did subsequently file a case alleging claims of unjust enrichment against American Growth, IRC, and

other corporations. Brody argues that this court should determine the merits of the issue raised by Bock's appeal to the court of appeals on the substance of the trial court's dismissal with respect to the unjust enrichment claim. That question is not before us in this certiorari proceeding.

(a) **Persons to be Joined if Feasible.** A person who is properly subject to service of process in the action shall be joined as a party in the action if: (1) In his absence complete relief cannot be accorded among those already parties; or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may: (A) As a practical matter impair or impede his ability to protect that interest or (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. ...

(b) **Determination by Court Whenever Joinder Not Feasible.** If a person as described in subsections (a)(1) and (a)(2) of this Rule cannot be made a party, the court shall determine whether in the interest of justice the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: First, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Not every person who has an interest in issues raised in a particular civil action must be joined as a party to that action. *Woodco v. Lindahl,* 152 Colo. 49, 54, 380 P.2d 234, 237–38 (1963). If the interests of the parties before the court may be finally adjudicated without adversely affecting the rights of an absent person, the absent party need not be joined. *Id.* at 54–55, 380 P.2d at 238. Only if "an absent person's interest in the subject matter of the litigation is such that no decree can be entered in the case which will do justice between the parties actually before the court without injuriously affecting the right of such absent person" is the absent person considered indispensable. *Id.* (quoting *Ford v. Adkins,* 39 F.Supp. 472, 473 (E.D.Ill.1941)); C.R.C.P. 19.

■ At trial Brody did not argue that American Growth and IRC were indispensable parties in support of his motion to dismiss Bock's unjust enrichment claim, and the trial court did not refer to C.R.C.P. 19 in its order of dismissal. Furthermore, neither Bock nor Brody relied upon C.R.C.P. 19 in their briefs before the court of appeals. The trial court did not determine that complete relief could not be afforded Bock on his unjust enrichment claim against Brody in the absence of those two companies, pursuant to C.R.C.P. 19(a)(1); did not determine that the two companies had the interests relating to Bock's unjust enrichment claim against Brody as required by the provisions of C.R.C.P. 19(a)(2)(A) or (B); and did not order that the two companies be joined as parties to the action, pursuant to C.R.C.P. 19(a).[8]

Furthermore, the record does not support such determinations. We have previously recognized that in the context of a civil action filed by a police officer who was an unsuccessful candidate for promotion and who challenged the results of the relevant examination, two other police officers who were promoted to the two open positions were indispensable parties to the action. *Civil Serv. Comm'n v. District Court,* 185 Colo. 179, 180, 522 P.2d 1231, 1232 (1974). A contrary finding may have subjected one of the promoted officers to demotion if the plaintiff officer were ordered to be promoted.

In contrast, the absence of American Growth and IRC from this civil action neither precluded the companies from protecting their interests in the litigation nor subjected them to multiple or inconsistent obligations. Furthermore, the trial court was not precluded from affording Bock complete relief in his claims against Brody in the absence of the two companies. As the trial court noted, Bock claimed that Brody himself was unjustly enriched by Bock's actions.

---

8. The record establishes the absence of any impediment to the joinder of American Growth and IRC as parties to this action; they were initially named defendants to Bock's unjust enrichment claim.

Bock did not claim that Brody, in his capacity as President of American Growth and IRC, was unjustly enriched. If Bock were to prevail on this issue, he would recover only from Brody as an individual which would not subject American Growth or IRC to liability.

The trial court did not find American Growth and IRC to be indispensable parties. The court of appeals erred in holding that they were indispensable parties in this action.

### IV

Accordingly, we affirm the judgment of the court of appeals with respect to the fraud claim, reverse the court of appeals' dismissal of the unjust enrichment claim, and remand the case to the court of appeals for determination of whether the trial court erred in holding as a matter of law that Bock cannot prevail on that claim.